[Civ. No. 1604. Third Appellate District.—February 10, 1917.]

WILLIAM DIESTELHORST, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents; BERT BOLLINGER, Applicant.

WORKMEN'S COMPENSATION ACT—INJURY TO MINOR—THOUGHTLESS DISOBEDIENCE OF ORDERS—RIGHT TO COMPENSATION.—Under the provisions of the Workmen's Compensation Act, a boy of the age of fifteen years employed to act as a general helper around a gold dredger is not chargeable with such willful misconduct as to deprive him of the benefits of the act, in attempting to oil the machinery without waiting until the same had come to a full stop, notwithstanding an express warning not to oil the machinery while in motion, where such violation of instructions was not done intentionally and deliberately, but in a moment of thoughtlessness and for the purpose of saving time.

APPLICATION for a Writ of Review originally made to the District Court of Appeal for the Third Appellate District to annul an award of the Industrial Accident Commission.

The facts are stated in the opinion of the court.

Dean & Carter, Thos. B. Dozier, and Eric G. Scudder, for Petitioner.

Christopher M. Bradley, for Respondents.

BURNETT, J.—Petitioner seeks the annulment of an award made by said commission to said applicant for an injury received by the latter while employed by the petitioner to act as a general helper around a gold dredger. It is

claimed that the accident was due to the "willful miscon-
duct of said Bert Bollinger, and therefore the commission
was without jurisdiction to make the award." It is admitted
that if no other rational conclusion as to the attributable
cause of the accident can be drawn from the evidence, then,
in the exercise of its statutory authority, the court should
vacate and annul said award. It is, however, the claim of
respondents that there is sufficient justification for the find-
ing that the injury was not due to the willful misconduct
of the applicant, and that the commission therefore cannot
be properly chargeable with an adjudication in excess of its
legal authority.

Indeed, the attack and the defense relate not only to the
evidence, but to the sufficiency of the finding itself to sup-
port the conclusion of the commission. It is the contention
of petitioner that the facts found are compatible only with
the position that the applicant was guilty of willful miscon-
duct, and that petitioner is therefore not liable under the
Workmen's Compensation Act.

We are asked to set aside the award by reason of the fol-
lowing finding: "That previous to said injury said employee
had been instructed by his employer on two occasions not to
oil the said machinery while the same was in motion, and had
been warned of the danger of so doing; that at the time of
the injury the motive power of the machinery had been shut
off, and after so shutting off the power the machinery con-
tinues to move for fifteen minutes by its own momentum, and
while well knowing the said instructions and the danger of
their violation, but for the purpose of saving the time neces-
sary to wait for the machinery to stop, said employee, without
waiting until the machinery had stopped, thoughtlessly and
without at the time being mindful of said instructions, at-
tempted to oil the same, and in so doing sustained the injury
as above set forth; that by reason of the extreme youth of
said employee and his consequent lack of mature judgment
and discretion, and for the further reason that the said
act of the employee was with the sole motive and for the
sole purpose of saving time, and to that extent in the interest
of the employer, the act of the employee in violating his in-
structions as aforesaid was negligent but was not an act of
willful misconduct, and the said injury was not caused by
the willful misconduct of the employee."

It is the contention of petitioner that a violation of such reasonable directions constitutes in itself willful misconduct, and that it is not condoned or mitigated by the excuse or apology contained in said finding. He claims "that the cases from *all jurisdictions* uniformly hold that *the breach of an express rule or order, particularly if made expressly for the safety of an employee, constitutes serious or willful misconduct within the meaning of workmen's compensation acts."* He cites a large number of cases beginning with Scotland. Of these, it is asserted that two are practically on all-fours with the case at bar. Both involved minors and the injuries were occasioned by disobedience of rules. The first is *Powell* v. *Lanarkshire Steel Co., Ltd.,* 6 Sc. Sess. Cas. 5th Series, 1039 (1904). Therein the father of Patrick Joseph Powell, a minor, claimed compensation for the death of said minor under the compensation act of 1897. At the time of his death he was fifteen years of age (the same as applicant herein). He was employed in a rolling-mill and was allowed certain intervals for resting. During such an interval the deceased and some other boys of about the same age, who were also employed in the mill, started to play on some wagons on an inclined track. One of the wagons started down the incline and the deceased, in an attempt to stop it, was thrown beneath the wheels and met his death. The boys, including the deceased, had been instructed not to play about the wagons. Lord Trayner, in his decision, said: "The defenders had given this boy and others like him positive instructions that they were not to go across the line of rails or near the wagons. They had been repeatedly warned against doing so for fear of accident, and they knew that in doing so they were doing wrong. I cannot figure anything more serious or willful than positive and intentional disobedience to a strict and positive order. That is the character of the case, and I must hold accordingly." The other is *Fanny Callahan* v. *Maxwell,* 2 Sc. Sess. Cas. 5th Series, 420. Therein, Fanny Callahan, a young girl, was employed on a steam thresher to unbind and hand sheaves to the millman, which he put through an opening into the mill. She had been instructed to remain at her place and had been warned of the danger of moving about. The millman had occasion to go beneath the thresher to remove an obstruction, whereupon Fanny attempted to step across the opening for

the purpose of speaking to another girl on the other side of the opening. In crossing the opening, her foot slipped and was caught by the revolving drum and her right leg was taken off below the knee. One question presented to the appellate court was whether her conduct in leaving her place and attempting to step across the opening in the machine amounted to serious and willful misconduct on her part in the sense of the Workmen's Compensation Act. It was held that she was so chargeable, it being stated in the opinion: "I do not think that there can be a more distinct case of willful misconduct than one in which a person is injured in consequence of having disobeyed a specific order such as that given here and which was given in order to insure her safety."

Many cases, also, from other British jurisdictions are cited, of which we may refer to *Best* v. *London & Southwestern R. R. Co.* [1907], App. Cas. 209, [8 Ann. Cas. 1], which went to the house of lords. In that case, an engine driver, because his train was late, left the foot-plate of his engine while in motion and mounted the coal on the tender, in violation of a rule of the company that "enginemen and firemen must not leave the foot-plate of their engine while the latter is in motion." He was killed by being struck by a bridge. It was claimed at the trial of the claim for compensation that the driver's object was to try and find better coal in order to make up the lost time. In the decision, the Lord Chancellor (Loreburn) said: "This unfortunate man broke this rule, which certainly is a very serious rule. There was evidence that he knew of its existence and that he knowingly and willfully acted in defiance of it. It was a rule to save life and to prevent danger both to the public and to the servants of the company." In the same decision Lord Atkinson said: "I do not attempt to define what 'willful misconduct' is, nor to express any opinion which I might be unable to retract on further consideration, but it would appear to me, I confess, that if a man breaks a rule knowing at the time that he is breaking it, and is not compelled to break it by some superior power which he cannot resist, he is guilty of a willful breach of it."

Coming nearer home, it is the opinion of petitioner that we have in this state two decisions that virtually govern this, that is, *Pacific Coast Casualty Co.* v. *Pillsbury et al.,*

31 Cal. App. 701, [162 Pac. 1040], and *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35, 9 C. C. A. 466].

In the first of these, an errand boy in the employ of a millinery company in San Francisco had been expressly warned not to ride in or attempt to operate the freight elevators in the building occupied by his employer. Notices to the same effect were also conspicuously posted near the entrances of the freight elevators. Said errand boy, upon returning from an errand, attempted to ascend by way of one of the freight elevators to the floor where his employer had his place of business, and, in so doing, to operate the elevator himself. The boy was killed and compensation was sought for his death. The Industrial Accident Commission made findings "that the deceased and other employees of the defendant frequently operated said Fifth Street elevator by themselves without reproof or discipline by said defendant," and "that the signs placed by the owners of said building upon the doors of the elevators were habitually disregarded without protest," and furthermore, "that the protection of its employees from serious bodily injury or death in connection with the operation of such elevators was not made plain to them nor to Cassell (the deceased) in a manner suited to the intelligence of a person of his age," and therefore compensation was allowed. It was decided by the district court of appeal for the first district that there was no evidence to support these findings, and the award was accordingly annulled. In denying the petition for rehearing the court said: "We are of the opinion that the undisputed evidence in the case showed that the deceased had been expressly warned not to ride in, or attempt to operate, the freight elevators in the building in which he met his death, under penalty of discharge, and that notices were posted at, or near, the entrance of such elevators of similar import, and that the disregard of such warning by the employee must, in the absence of evidence mitigating such disobedience, be held to constitute such willful misconduct as would prevent a recovery before the commission, where, as in the instant case, there is no evidence tending to show that the disregard of its warnings, orders, and notices was condoned by the employer."

In the Great Western Power case, *supra,* the award by the commission was annulled by the supreme court by reason of the willful misconduct of deceased, Mayfield, who had been employed as a lineman by said company. The company had issued orders that employees should not work on poles carrying live wires without using rubber gloves provided by the company. It was not shown that Mayfield did not know or understand this rule. On the day of the accident, Mayfield ascended a pole to cut a wire without taking his gloves, and he received a shock which caused his death. In discussing the meaning of the term "willful misconduct" the supreme court declared: "But it cannot be doubted that a workman who violates a reasonable rule made for his own protection from serious bodily injury or death is guilty of misconduct, and that where the workman deliberately violates the rule, with knowledge of its existence and of the dangers accompanying its violation, he is guilty of willful misconduct." It was held that the evidence showed a deliberate violation of the rule, and hence the annulment.

It must be conceded that petitioner makes a strong and persuasive argument, buttressed as it is by an imposing array of authorities. On the other hand, the contention of respondents is entitled to serious consideration. It is claimed that the defense of willful misconduct is an affirmative defense in the nature of a penal provision forfeiting compensation for willful wrongdoing; that the burden of proof is upon the employer to establish this defense, and that it was not established in the present case by reason of the failure of the employer to prove the necessary element of willfulness. In amplifying their position, respondents indulge in an interesting historical review of the common law and of the statutes culminating in the workmen's compensation acts as they relate to the redress for injuries afforded to the employee. The dissimilarity between the common-law remedy and that under the modern legislation is pointed out, and it is declared that under the system of workmen's compensation acts now adopted in California and in approximately thirty-five states of the Union, the industry is made to carry the cost of injuries sustained by its employees in the course of its operation, without regard to the fault of either the employer or employee. Or, as stated by the supreme court of Montana in *Lewis & Clark County* v. *Industrial*

*Acc. Board of Montana,* 52 Mont. 6, [155 Pac. 168]: "Liability and compensation statutes cannot be grouped together, since they are the antipodes of labor legislation, having their foundation in essentially different social and economic ideas, the liability statutes being intended to limit the defenses of the master, and the compensation statutes to provide compensation for the workman regardless of negligence of master, fellow-servant, or himself." Attention is then called to a peculiar provision of the California act and of some of the other states, penalizing, so it is claimed, the employer or employee, as the case may be, for wanton and intentionally evil conduct, as provided in section 12 (b) and section 12 (a) (3) of our statute (Stats. 1913, p. 283), and it is claimed that this provision as to the employee was not intended as a substitute for contributory negligence, and it should not be so construed, but should be regarded in the spirit of section 21 of article XX of the constitution authorizing the legislature by appropriate enactment to "create and enforce a liability on the part of all employers to compensate their employees for any injury incurred by the said employees in the course of their employment irrespective of the fault of either party." To give effect to this provision and the obvious purpose of the said compensation act, it is claimed that the misconduct which would defeat the right of the employee to compensation must be more than even gross contributory negligence, in fact, must be the violation of reasonable rules or the doing of an extremely hazardous act which under the common law would amount to a breach of the duty owed to the employer, and, in addition, must be accompanied by a willfulness of intent or wrong motive amounting to a *mens rea.* It is insisted that this is demanded by the language and spirit of the compensation act, and is supported by the decisions of this state and of other jurisdictions.

Among the decisions cited from foreign jurisdictions is *Jensen* v. *Bowen Bros. & Co.,* Ct. of Abr. of New Zealand, Canterbury Ind. Dist. (1909), Vol. 8, Decisions under the Workmen's Compensation for Accident Act, 49, 50, wherein it is said: "The question of serious and willful misconduct is one of fact to be determined on the circumstances of each case. In dealing with the question the court is not bound to treat every violation by a worker of a rule in force in the factory or works as amounting necessarily to serious and will-

ful misconduct. Whether it is so or not depends on the nature of the rule and the circumstances in which the violation has taken place."

The supreme court of Massachusetts, in the *Matter of Nickerson,* 218 Mass. 158, [105 N. E. 604], declared that "serious and willful misconduct," for the consequences of which the employee is not entitled to compensation, under the Workmen's Compensation Act of that state, "means more than even gross negligence and resembles closely the wanton or reckless misconduct which renders one liable to a trespasser or to a bare licensee," and it was held that "where an employee, engaged in cleaning and painting, began work around a moving shaft shortly before noon, although he had been ordered to do that work during the noon hour, while the machinery was stopped, his disobedience was a thoughtless act on the spur of the moment, rather than deliberate disobedience, and does not deprive his dependent of compensation under said act." In that case, it seems that the deceased, less than half an hour before he was killed, was told by the superintendent to do the work at the noon hour, and yet the court said: "The fact that the injury was occasioned by the employee's disobedience to an order is not decisive against him. To have that effect, the disobedience must have been willful, or, as was said by Lord Loreburn in *Johnson* v. *Marshall Sons & Co., Ltd.,* [1906], App. Cas. 409, 411, [5 Ann. Cas. 630], 'deliberate, not merely a thoughtless act on the spur of the moment.' "

It is asserted that the same rule is recognized by our supreme court in the quotation hereinbefore made from 170 Cal. 180, [149 Pac. 35, 9 C. C. A. 466], where willful misconduct is described as the *deliberate* violation of a reasonable rule made for the workman's benefit, where he has knowledge of its existence and of the dangers accompanying its violation.

As to the two cases from this state cited by petitioner, respondents find substantial disparity with this. It is pointed out that in the Pacific Coast Casualty Company case the young employee was killed in the accident, and it was impossible to discover his exact mental state in violating the rule, that is, whether it was willful disobedience or the result of an inadvertence, and in the absence of testimony on that point the court naturally, from the bare fact of dis-

obedience, drew the inference that it was deliberate and willful. This, probably, was what the court had in mind in its opinion denying the petition for rehearing when it referred to the "absence of mitigating circumstances." Herein there is express testimony negativing the willfulness which overcomes any inference drawn from the bare fact of disobedience.

In the Mayfield case, *supra* (170 Cal. 180, [149 Pac. 35, 9 C. C. A. 466]), there was not only an absence of testimony tending affirmatively to establish inadvertence, but there was, in addition, testimony that the deceased had been warned within a few hours before his death of the danger of not wearing gloves, which was sufficient to establish willfulness. Mayfield was, moreover, a man of mature years.

As to the cases from foreign jurisdictions cited by petitioner, no specific attention is paid to them by respondents. However, the most important ones appear for the first time in the reply brief of petitioner, it being stated therein that "since receiving respondents' reply brief we have been to some trouble to look up the cases under workmen's compensation acts interpreting or defining 'willful misconduct,' and have found that most of said cases originated in the courts of Great Britain." It would have been more satisfactory if petitioner had taken the trouble to do that before filing his opening brief. We cannot undertake to examine these cases in detail. Most of them, we may say, involved adults and accidents under circumstances leading necessarily to the conclusion that there was *willful* violation of reasonable rules for the safety of the workmen.

Again, while some of the cases called for a consideration of *"serious* and willful misconduct," it is apparent that the word *"serious"* added nothing to the gravity of the conduct. Any willful misconduct that leads to death or great bodily injury must necessarily be *serious.*

In reference to the Powell case, from Scotland, it is apparent that the decision is based upon two grounds,—first, that the accident did not arise "out of the employment" of the deceased, and, second, that he was guilty of deliberate and intentional wrongdoing when he went to a place where he had no right to be and placed himself in a dangerous position against which he had been warned.

The Fanny Callahan case was decided upon the same grounds.

In all these cases holding that the victim of the accident was chargeable with willful misconduct, it seems to have been assumed that the violation of the rule was intentional and deliberate, and, as far as we are advised, there was no attempt to excuse it on the ground of inadvertence or thoughtlessness. The violation of a rule known to the party would, of course, raise the presumption that it was done deliberately and intentionally, but is it not a disputable presumption? May not a person, although guilty of an infraction of an order given for his protection, show that at the time he was unmindful of the order and that his act was the result of inattention and thoughtlessness and without any real purpose to be contumacious? Petitioner contends that to permit this course would open the door to fraud and perjury. In some cases, no doubt, such would be the effect, but these evils will never be entirely avoided in the attempt to administer justice through human instrumentalities. But the objection goes rather to the weight and effect of the evidence than to its admissibility. When the person violates a known rule, it should be held ordinarily that he does it deliberately, but we do not think that the door should be closed entirely against the inquiry whether it may not have been the result of thoughtlessness and inadvertence, at least in the case of a mere child. Where a minor is involved, why should not the same consideration be shown as in the ordinary action for damages wherein contributory negligence is urged as a defense? Why should not the distinction be recognized that is so learnedly pointed out in the case of *Guyer* v. *Sterling Laundry Co.*, 171 Cal. 761, [154 Pac. 1057]? Therein, as to minors, it is said: "Mentally, a tremendous growth must take place, before knowledge has ripened into wisdom and wisdom coupled with experience has developed a sound and sane judgment. . . . Youth is ever the time of heedlessness, of impulsiveness, and of forgetfulness. Lacking power of continuous application and concentration, it will, upon the other hand, center its thoughts for a brief time and to its peril upon one matter to the exclusion of all else."

With this well-known characteristic of youth in view, why should it be thought a strange thing that a boy of fifteen should forget an order given him and, in a moment of for-

getfulness, do that which was forbidden? And acting thus, how could his conduct be justly denominated willful misconduct? In that event it would be, properly speaking, willful misconduct to no greater degree than if he did the act in the absence of any order. In either case it might be, and, in this case, it would be contributory negligence but nothing more.

It is probably true, as contended, that the portion of the finding as to oiling the machinery, while in motion in order to save time does not indicate a sufficient palliation or excuse for his conduct, yet it is at least opposed to the idea that he had an intentionally disobedient frame of mind, and is in aid of the conclusion that there was an absence of willfulness.

Looking at the evidence, we find sufficient support for the inference that he was not intentionally and deliberately disobedient. The boy himself, when asked: "Were you aware at the time that you were violating your employer's instructions? Did you know and think at the time that you were disobeying orders?" replied: "No, sir, I didn't think." He further said that at the time he did not remember that Diestelhorst had told him not to oil the machinery while in motion. Indeed, one cannot read the record without obtaining a strong impression of the candor and honesty of the witness. He was anxious to save time and he wanted to get out as much dirt as possible. He was in the habit of oiling right after lunch before the machinery was put in motion, but on this occasion he started it in obedience to the direction of petitioner, or, as the boy explained it: "We were then eating dinner, and right after dinner Diestelhorst wanted to go and fix a bridge across the creek, and there was a 'jack' out where we were dredging and he said to move that, and I started up and he passed the chain around it and moved it, and I shut off the power and went to oiling."

We think from these considerations that the commission might conclude with legal propriety that the boy was not chargeable with such *willful misconduct* as to deprive him of the benefits of the compensation act, and the writ is therefore discharged and the award affirmed.

Chipman, P. J., and Hart, J., concurred.