[Civ. No. 2753.    Second Appellate District, Division One.—April 4, 1919.]

WILLIAM G. McADOO, Director-General of Railroads, Petitioner, v. INDUSTRIAL ACCIDENT COMMISSION et al., Respondents. .

[1] WORKMEN'S COMPENSATION ACT—OMISSION TO USE GOGGLES—DISOBEDIENCE OF RULES AND INSTRUCTIONS — WILLFUL MISCONDUCT — REDUCTION OF COMPENSATION.—Where a machinist's helper engaged by a railroad company voluntarily and intentionally omits to obtain and use goggles, contrary to rules of which he has knowledge, and contrary to specific instructions, all of which were laid down for his protection, because goggles are "in his way," he preferring to take the chance of personal injury, he is guilty of willful misconduct, and under section 6, subdivision 4, of the Workmen's Compensation Act of 1917, the compensation otherwise recoverable by him should be reduced one-half.

PROCEEDING in Certiorari to review an award of the Industrial Accident Commission.    Award annulled.

. The facts are stated in the opinion of the court.

`Dana T. Smith and E. E. Bennett for Petitioner.

Christopher M. Bradley and Warren H. Pillsbury for Respondents.

CONREY, P. J.—*Certiorari.*    Pursuant to stipulation, the above-named petitioner has been substituted in place of the original petitioner, Los Angeles & Salt Lake Railroad Company.    The writ was issued to review an order of the Industrial Accident Commission, awarding to Robert H. Hogan compensation for injuries received by him while working as an employee of said Railroad Company.    It is conceded that if the injury received by Hogan was caused by his serious and willful misconduct, this court may set aside the award and remand the case to the commission for the reduction of the award to one-half of the amount allowed by the commission.

Section 6 of the "Workmen's Compensation, Insurance and Safety Act of 1917" (Stats. 1917, p. 831), in subdivision 4 thereof, reads as follows: "Where the injury is caused by the

serious and willful misconduct of the injured employee, the compensation otherwise recoverable by him shall be reduced one-half; *provided, however,* that such misconduct of the employee shall not be a defense to the claim of the dependents of said employee, if the injury results in death, or to the claim of the employee, if the injury results in a permanent partial disability equaling or in excess of seventy per cent of total; *and provided, further,* that such misconduct of said employee shall not be a defense where his injury is caused by the failure of the employer to comply with any provision of law, or any safety order of the commission, with reference to the safety of places of employment.'' The award in this case is made upon a permanent partial disability equaling thirty and one-quarter per cent of total disability of the right eye.

The accident by which the applicant R. H. Hogan was injured occurred on February 12, 1918, while he was employed as a machinist's helper. He was reaming saddle-bolt holes in a locomotive with an air motor and reamer. The reamer became stuck and caused a burr to form in the top of the hole. He removed the reamer and chipped the burr off, and a piece of steel glanced off and struck him in the eye. He was not at that time wearing any goggles or other protection to the eyes. He had been employed as a machinist's helper at that place for about four months, and had several years' experience as a workman in other machine-shops. At several places in the shop was posted a circular headed ''Safety Rules for Shopmen.'' One of these was, ''Do not do any chipping or grinding without wearing safety goggles. If you are not provided with goggles, go to foreman.'' The applicant admitted that he had seen the notices posted, but that he never read them. Nevertheless, it is conceded that he was ''familiar with the purport'' of this rule. He knew that the company provided goggles and that they were to be found in the tool-room. The following questions and answers are part of the testimony of the applicant before the commission: ''Q. Have you ever used any glasses at all? A. I used goggles when I was doing a regular job of chipping. Q. You were doing a job of chipping at that time?. A. Regular chipping job. This is just an incident of where you pick up a hammer and chisel and knock off a chip and go right ahead with your regular line of work. Q. You were using a reamer driven by air

under pressure? A. Yes. Q. And the reamer stuck in the hole? A. Yes. Q. That raised around the edge of the hole some chips of steel? A. Rough place. Just caused a rough place at the top of the hole. That prevented the reamer from running smoothly. In order to get a smooth surface to start from I knocked those chips off and for that purpose I picked up a hammer and chisel. It was while using a hammer and chisel that the piece of steel flew into my eye. . . . Q. Had you been given any orders at all as to wearing the glasses when you were engaged in such work as that? A. No, sir.''

On cross-examination the applicant admitted that he had on another occasion some cast-iron burrs in his eyes and had the clerk of the general foreman remove them. He said that he did not remember that about an hour before the time when he received his injury for which he seeks to obtain compensation, he got another piece of metal in his eye and also had it removed by the clerk. Also he did not remember that the first of these two incidents occurred on the day preceding the accident in question here, and that the clerk and the general foreman both told him to get goggles and wear them when he was doing work where particles of metal were liable to fly. He testified that he knew that goggles were kept in the tool-room to be used by workmen, ''if they thought they needed them.'' After the foreman, Keith, and his clerk, Pauff, had testified fully to both of the incidents referred to in the above-mentioned cross-examination, Hogan gave further testimony. In this later testimony the following occurs: ''Q. You have heard the testimony of Mr. Keith and Mr. Pauff as to your having been in the office the day previous with some foreign body in your eye, have you? A. Yes. Q. Is that testimony correct or incorrect? A. I went in there before this, I don't remember whether that was the exact date or not. Q. Do you know how you got the foreign body in your eyes that was in there at that time? A. Drilling holes in cast iron, and the dust in the air from the exhaust of the motor. Q. You told them that was the way you got it in, did you? A. Yes. Q. And you supposed that was the way? A. I told them I was drilling holes in the saddle— Q. The morning you received the injury that caused the loss of your eye had you made a previous visit to Mr. Pauff? A. I had been there before with this dust in my eyes, but I don't remember whether that was the morning

before or not.  Q. How many times were you there?  A. There just on this occasion with this cast iron, I remember twice, and he gave me some water, some eye-wash to wash it out.  Q. Do you recall whether you were there that morning or not?  A. I don't remember whether that was the time that I was or not.''

[1]  It thus appears that there is no definite contradiction of the testimony given by the foreman and clerk on this matter, but rather that silence which gives consent.  The job on which Hogan was employed involved the reaming of about fifty of those saddle-bolt holes, and included more than one day's work.  That the forming of burrs was a common incident of that work is not denied.  It was so much expected that Hogan kept by him a hammer and chisel with which to remove the burrs.  He voluntarily and intentionally omitted to obtain and use goggles, contrary to rules of which he had knowledge, and contrary to specific instructions, all of which were laid down for his protection.  The only reasonable explanation is that he disliked the goggles because they were, as he said, ''in his way''; and so he preferred to take the chance of personal injury.  This was willful misconduct and it was serious.  The case was in essential elements very similar to that disclosed in *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, [149 Pac. 35], where an electric lineman disobeyed a known rule and positive instructions requiring him to wear rubber gloves while handling high-power wires, and in consequence was killed while doing that kind of work without gloves.  As the court there said: ''It cannot be doubted that a workman who violates a reasonable rule made for his own protection from serious bodily injury or death is guilty of misconduct and that where the workman deliberately violates the rule, with knowledge of its existence and of the dangers accompanying its violation, he is guilty of willful misconduct.''  The case at bar sharply distinguishes itself from that of *Diestelhorst* v. *Industrial Acc. Com.,* 32 Cal. App. 771, [164 Pac. 44], where the misconduct of the applicant occurred in a moment of thoughtlessness and not with deliberate intention.  The commission's finding, that the applicant's injury was not proximately caused by his serious and willful misconduct, is not sustained by the evidence.

Our conclusion is, that upon the record produced herein, the award to the applicant should have been for only one-half

of the amount allowed by the commission, and as to the excess above that amount the commission acted in excess of its powers. The award is annulled, and the case is remanded to the Industrial Accident Commission for further proceedings in accordance with this decision.

Shaw, J., and James, J., concurred.