[Civil No. 1700.    Filed February 2, 1920.]

[187 Pac. 563.]

# CALUMET AND ARIZONA MINING COMPANY, a Corporation, Appellant, v. JAMES P. GARDNER, Administrator of the Estate of JESSE G. GARDNER, Deceased, Appellee.

1. DEATH—MEASURE OF DAMAGES FOR DEATH OF ADULT SON STATED.—In a parent's action under Civil Code of 1913, paragraph 3158, against an employer for the death of an adult son, the measure of damages is the reasonable expectation of the parent of pecuniary benefit, had the son lived.

2. TRIAL—INSTRUCTED VERDICT FOR DEFENDANT IMPROPER IF PLAINTIFF ENTITLED TO RECOVER IN ANY VIEW OF EVIDENCE.—If plaintiff, in any view of the evidence, was entitled to recover, the defendant's motion for an instructed verdict was properly overruled.

3. DEATH—EVIDENCE AS TO PECUNIARY DAMAGES FROM DEATH OF ADULT SON INSUFFICIENT TO GO TO THE JURY.—In a parent's action for the death of an adult son, defendant *held* entitled to an instructed verdict for lack of evidence showing substantial pecuniary damages.

4. DEATH—ACTION NOT MAINTAINABLE FOR "NOMINAL DAMAGES" IN ABSENCE OF ACTUAL DAMAGE.—An action cannot be maintained, under the Employers' Liability Act (Civ. Code 1913, pars. 3153–3162), by a parent for the death of an adult son, in the absence of any substantial loss, for the recovery of "nominal damages," which are a trivial sum, properly awarded in certain cases for mere technical injury, as distinguished from actual or compensatory damages.

5. MASTER AND SERVANT—DIRECTED VERDICT FOR CONTRIBUTORY NEGLIGENCE IN HANDLING ELECTRIC SWITCHES IMPROPERLY REFUSED.—In an action, under Civil Code of 1913, paragraphs 3154, 3158, a workman, experienced and skilled in handling electric switches, having been killed when he reached for a switch safety handle without looking, and grasped a live blade, defendant *held* entitled to a directed verdict, on the ground that deceased was guilty of contributory negligence.

4. On the question of statutory right of parent to recover for death of adult child, see note in **L. R. A.** 1916E, 190.

4. For authorities upon the question whether failure to give nominal damages is reversible error, see note in 5 **Ann. Cas.** 225.

6. NEGLIGENCE—CONTRIBUTORY NEGLIGENCE QUESTION FOR COURT WHEN
   FACTS ARE UNDISPUTED.—Where the facts are undisputed, and the
   inferences can lead but to one conclusion, the question of contributory
   negligence is for the court.

APPEAL from a judgment of the Superior Court
of the County of Cochise.   Alfred C. Lockwood,
Judge.   Remanded, with directions to dismiss.

### STATEMENT OF FACTS.

Jesse Gardner was killed about 3 o'clock in the
morning of July 11, 1917, by coming in contact with
an electric current.   At the time of the accident he
was working for defendant in its smelter at Douglas,
Arizona, in the capacity of converter skimmer.   His
duties were to raise and lower the converters, and
skim off the slag, and pour the copper from the con-
verter into the mould.   These things were performed
with machinery operated by electric power.   The
current used for this purpose was taken from the
power line into a switch located about three or three
and one-half feet from the ground on an upright
iron column or beam.   The current was carried to
the motor, with which the converter was moved, by
means of three wires connected with the switchboard,
one wire directly, and two through a controller.   In
operating the motor, and with it the converter, the
skimmer, when all of the wires were properly func-
tioning, used the controller.   The controller was com-
pletely inclosed with an iron covering, except the
handle which the skimmer turned to let on or shut
off the electric current as the necessities required,
and in this manner of handling there was no danger
of coming in contact with the electricity.

On the night of the accident, the coil of wire on
the motor was partially grounded and neutralized
from slag or moisture.   This was not an unusual
thing.   It had happened many times before, and the

evidence shows that the grounding of wires cannot be avoided. When one of the wires became grounded, as in this instance, it necessitated the shutting off of the electric current from the controller and motor except when they were in actual use, and this was done by turning off the switch. The converter boss learned of the grounded wire about 11 o'clock at night and advised the deceased of the fact. The deceased thereafter, when he wanted to move the converter, would go to the switch, which was on the opposite side of the beam from where the controller was situated, and open the door of the switch-box, and, by means of an insulated handle, turn the current on. Then he would return to the controller and with it operate the machinery. The switch was inclosed in an iron box, and could be used only by opening a door. The deceased had turned the current on and off from ten to fifteen times this night, after being told that one of the wires had become neutralized; but each time he had gone around the beam and in front of the switch-box, so that he could see the three wires and three blades in the box, and thus manipulate the current with the insulated handle. The three blades in the switch-board were about six inches long and corresponded with the three wires entering the switchboard from the power line and the three wires leaving the switchboard to the motor and controller. When the current was turned on at the switch, these blades were electrified, unless the wires were grounded. A grounded wire neutralized the blade to which it was attached. The controller-box was to the right of the beam on which the switch was placed, with a space of about fifteen inches between the beam and the controller-box. The operator of the controller could not see the switch while using the controller because it was on the opposite side of the beam from

where he stood.  He either had to go around the beam to the opposite side, where the switch was, or, by holding on to the controller-box, he could swing his body in between the beam and the controller-box and forward, so as to see the switch well enough to operate it without danger of being electrocuted.  He had, prior to his death this night, "pulled the switch or put it on" several times.  A witness who saw him when he was killed says it happened in this way:

"Deceased went around the beam in front of the switch and turned on the current; he returned to the controller, gripped it, and turned the converter down, and poured all the slag off, skimmed it off and went to raise it up.  He went to raise it up again, and when he straightened it up, and at the same time while he was looking at the converter, he was taking his gloves off. . . . He just turned around like this [indicating that he was standing in the space between beam and controller-box, looking in a direction away from the switch], and went to grasp the switch on the other side like this [indicating the extended right arm behind the beam, where the switchboard was].  I was standing about twenty-five feet apart from him, and when I see him turn around like that, and when he grabbed the switch, his head fell right back, and I got a hold of him by the clothes and pulled him off."

One of the live blades, after the accident, had upon it marks that were thought to be the finger-prints of the deceased.  The smelter was new.  One witness said of the insulation:

"It was first-class, all in iron pipes; everything is insulated where possible, and the hazard is as small as it can be made at the present time."

The switch was what is known as a three-pole switch and conformed in all respects with the Underwriters' Rules as to safety.  The deceased had worked for the defendant three years, and for two months as converter skimmer on this particular

converter, and had worked before that for a short time on another of defendant's converters, but under a different boss. He was familiar with the work, and on many occasions before, because of grounded wires, had used the switch in the performance of his duties. If fuses burned out, which was not an infrequent occurrence, the electric current was shut off at the switch, and new fuses were put in by the skimmer in charge. The employment at which the deceased was engaged was shown to be "a skilled workman's job," and the deceased was considered "a good man at his work."

The evidence on the question of damages was as follows: The deceased was twenty-one and a half years of age, unmarried and without issue. The plaintiff appellee, his father, was sixty-five years of age, and was living with another son in Texas at the time Jesse Gardner was killed. Some time before Jesse's death his father and mother were living in Douglas, and he lived with them. His mother dying, housekeeping was broken up, and the father moved to Texas. The evidence showed that the father was not able to work, but did not show that he was dependent upon the deceased. The deceased was a strong, healthy man, and, at the time of his death, was earning $5.60 per day.

Mr. Cleon T. Knapp and Messrs. Boyle & Pickett, for Appellant.

Mr. Robert N. French, for Appellee.

ROSS, J. (After Stating the Facts as Above.)—Plaintiff, as the father of deceased, seeks to recover damages under the provisions of chapter 6, title 14, Civil Code. The allegations of the complaint as to the duties of deceased and the manner of the happening of the accident in which he lost his life are in

accord with the statement of facts above set forth.
The defendant's answer, or at least the parts mate-
rial to the questions raised, consists of a general de-
nial and a plea that the death of the deceased was
caused by his own negligence.   The trial resulted in
a verdict and judgment in favor of plaintiff in the
sum of $5,500.

Among the assignments of error are the refusal of
the court to grant defendant's motion for an in-
structed verdict made at the close of the evidence,
the grounds of the motion being an utter lack of evi-
dence offered or introduced showing, or tending to
show, that plaintiff had suffered any damages what-
ever by reason of his son's death, and that the un-
disputed evidence showed that the accident in which
Jesse Gardner lost his life was caused by his negli-
gence.   We think both of these assignments are well
taken.   The statute (paragraph 3158) gives the
parent a right of action for the death of his child if
the latter is killed in the line of duty in one of the
named dangerous occupations, and the accident caus-
ing his death was not due to his negligence.   The
measure of damages, where the child is an adult, as
here, is the reasonable expectation of the parent of
pecuniary benefit from the continuance of the life of
the child.   *Dooley* v. *Seaboard Air Line Ry. Co.,* 163
N. C. 454, L. R. A. 1916E, 185, and note, 79 S. E. 970.
The above rule as to the measure of damages is one,
we believe, of universal application to cases where a
parent seeks to recover losses that he may have sus-
tained by reason of the death of his child.   The ex-
pectation must be based upon some fact or facts
aside from the relationship.   When a child becomes
of age, all his earnings and accumulations are his to
use as he sees fit.   The laws of this state do not re-
quire an adult child to contribute his services or his
earnings to his parents' support.

Without entering into a discussion of what facts have been held to constitute a reasonable expectation of pecuniary benefits, it is enough to say that the evidence in this case is lacking in all of the elements, except the one of relationship. It is a matter of common knowledge that an adult child is sometimes a financial burden to the parents. It may be from sickness, or profligacy, or drunkenness, or other cause of such fixed nature as to preclude all possibility of the parents receiving any assistance from him. The condition of the evidence, when the motion for an instructed verdict was made, fails to disclose any fact upon which the plaintiff could reasonably expect pecuniary benefit from his deceased son. There is nothing to indicate that he had ever contributed one cent to his parents, or that he probably would have done so, had he lived. The only evidence that either the father or son might have been a help to the other is the statement of the father that the son lived with his parents in Douglas before his mother died. We cannot conclude from this statement that the son helped defray the expenses of the parental home while living there, the contrary inference being compatible with what is the usual fact in such cases. Nor is the plaintiff's case helped by the further statement by the father that he had given up housekeeping after his wife's death; that he was not able to work, and was living in Texas with his oldest son when Jesse was killed. While these facts were doubtless competent, they do not go far enough. They do not show that the son had helped his father, or any fact, other than the relationship, from which in the future pecuniary help might be expected.

It is quite clear that no substantial pecuniary damages were proven, and that unless plaintiff was entitled to have the case go to the jury on a claim of nominal damages, the jury should have been in-

structed to return a verdict for defendant. While this point has not been raised nor argued by counsel, it was involved in the motion for an instructed verdict for, if plaintiff, in any view of the evidence, was entitled to recover from defendant, the motion was properly overruled. We are of the opinion that the right of action given by the statute is based upon the idea that the parent has actually sustained loss by reason of his son's death. To say that the legislature, even though no substantial loss be shown or suffered, intended that the parent should be·entitled to prosecute an action for nominal damages based upon the single fact of kinship, is ascribing to that branch of the government a purpose to impose upon the courts the burden of trying cases where the winner gains nothing but costs, for that is in effect what a judgment for nominal damages is. We have held in another case that the damages recoverable by an injured employee suing under the Employers' Liability Act, were compensatory only. *Arizona Copper Co.* v. *Burciago,* 20 Ariz. 85, 177 Pac. 29; *Arizona Copper Co.* v. *Hammer,* 250 U. S. 400, 63 L. Ed. 1058, 39 Sup. Ct. Rep. 553. Now, nominal damages are not thought to be compensatory, but "a trivial sum properly awarded in certain cases for mere technical injury" as distinguished from actual or compensatory damages. *Blake* v. *Atlas Supply Co.,* 51 Okl. 426, 152 Pac. 81. So, whatever the rule may be in other jurisdictions as to the allowance of nominal damages, we, in this kind of action, are committed against their allowance. The rule under the federal liability law is that a parent suing for loss on account of his adult child's wrongful death must allege and prove actual specific damages. *Garrett* v. *Louisville & N. R. Co.,* 235 U. S. 308, 59 L. Ed. 242, 35 Sup. Ct. Rep. 32 (see also, Rose's U. S. Notes).

The other question raised by motion for an instructed verdict is that the uncontradicted evidence shows that the accident in which Jesse Gardner lost his life was caused by the sole negligence of himself. Under the statute (paragraphs 3154 and 3158) a right of action arises when the death or injury is caused by an accident due to a condition or conditions of an occupation therein designated as dangerous, but if the death or injury has been caused by the negligence of the employee while working at such occupation, the employer is absolved from liability to anyone whatever. Just what negligence would defeat the right of recovery is the question for consideration. The word "negligence" used in the statute to characterize the only thing or act that will defeat or prevent a right of action for an injury or death doubtless was intended to have the significance that the term has long received in connection with actions arising out of tort. Such negligence is the absence of care, the care a reasonable and prudent person would exercise in the circumstances, or, as the highest court of the land has said:

"The failure to do what a reasonable and prudent person would ordinarily have done under the circumstances of the situation, or doing what such a person, under the existing circumstances, would not have done." *Baltimore etc. R. R. Co.* v. *Jones,* 95 U. S. 441, 24 L. Ed. 506; *Morenci Southern Ry. Co.* v. *Monsour, ante,* p. 148, 185 Pac. 938.

Measured by this standard, what may be said of the conduct of the deceased at the time of his death? He was familiar with the work he was performing, having been engaged in it for two months on and around the converter where he was killed, and for a time prior thereto on another converter operated in the same way. His employment was recognized as "a skilled workman's job," and he "a good man at his work." He was not ignorant of the dangers attend-

ant upon his work.   The use of the switch to reg-
ulate the electric current because of grounded wires
was a common occurrence.   On the night of his death
he had turned the switch on and off from ten to fif-
teen times, and on previous occasions had done the
same thing.   He must have known, when the switch
was turned off, the electric current was intercepted
at the switchboard, so that no electric power could
reach the controller or motor, because, when he
wanted to manipulate the latter instruments, he had
to turn the switch on.   He knew, then, that the
blades and wires in the switchboard were dead when
the switch was turned off, and they were alive when
the switch was turned on.   With this knowledge,
while the switch was on and two of the blades alive,
he undertook, while looking in the opposite direction,
to reach around the beam and turn off the switch,
doubtless intending to do so by the use of the safety
handle, and in doing so he missed the handle, and
instead grasped one of the live blades and was killed.

Can it be said that a reasonable and prudent per-
son, under the existing circumstances, would have
done as he did?   Or would not such a person have
done as the evidence shows the deceased had always
done before, looked into the face of the switch and
aided his hand with his eye to locate the safety
handle?   At other times that night, and before when he
manipulated the switch, he had placed himself in such
a position as to see the switchboard, and he could do
this in two ways:   By leaving the controller and walk-
ing clear around the beam on which the switch was
placed, or by standing between the controller-box and
the beam, and swinging his body around the beam,
until his head was in front of the switch.   Which-
ever method he adopted, he could see the blades, and
the wires leading to and from the blades, and also

the insulated safety handle, by the use of which he incurred no danger whatever.

A mere statement of the facts, it would seem, is sufficient to show that his conduct at the time was inexcusable. The evidence offers no excuse or reason for his undertaking to handle the switch in the manner he did, unless it might be inferred therefrom that he did it to avoid the physical exertion of walking around the beam, or bending his body around it, as above described. The thought that he may have momentarily forgotten, and thrust his hand against the blade, might excuse him from wilful negligence (*Diestelhorst* v. *Industrial Acc. Com.*, 32 Cal. App. 771, 164 Pac. 44), but not from exercising the care and caution of a reasonably prudent person in handling so deadly a power as electricity. "Forgetfulness" is defined as negligence. It is the omission to think or do. *Nye* v. *Sochor*, 92 Wis. 40, 53 Am. St. Rep. 896, 65 N. W. 854. To act "thoughtlessly" in the midst of a known or obvious danger has been characterized as culpable negligence. *Chicago etc. Ry. Co.* v. *Houston*, 95 U. S. 697, 24 L. Ed. 542 (see also, Rose's U. S. Notes); *Wheeler* v. *Oregon R. & Nav. Co.*, 16 Idaho, 375, 102 Pac. 347–355.

What was said in a Montana case has direct bearing upon the facts here:

"The plaintiff cannot recover, if he could have avoided the injury by exercising ordinary care and caution. That he may not have understood the danger, or may have temporarily forgotten the risk, is of no moment; he was charged with knowledge and understanding of such dangers and risks as he might have comprehended and appreciated by using ordinary care; if he forgot, he was negligent, for he was bound to remember. The defendant was not required to take better care of the plaintiff than the plaintiff was of himself." *Cummings* v. *Helena & L. S. & R. Co.*, 26 Mont. 434, 451, 68 Pac. 852, 856.

Beach on Contributory Negligence, section 138, says of the employee:

"He must take ordinary care and learn the dangers which are likely to beset him in the service. He must not go blindly to his work when there is danger. He must inform himself. This is the law everywhere."

See *Wormell* v. *Maine Central R. Co.,* 79 Me. 397, 1 Am. St. Rep. 321, 10 Atl. 49–52.

We think it safe to say that no case can be found wherein a recovery has been permitted if the injured party knew, or by the exercise of reasonable care or caution could have known, of the presence of an electric current, and, notwithstanding such knowledge or presumptive knowledge, carelessly and negligently placed his person in contact therewith; but, where a person of intelligence and understanding has been guilty of such conduct, the courts have not hesitated to place the blame where it belongs, and deny a recovery. *Capital Gas & Electric Co.* v. *Davis,* 138 Ky. 628, 128 S. W. 1062; *Great Western Power Co.* v. *Pillsbury,* 170 Cal. 180, 149 Pac. 35; *Billington* v. *Eastern Wis. Ry. & Light Co.,* 137 Wis. 416, 119 N. W. 127; *Glander* v. *Milwaukee Electric Light Co.,* 155 Wis. 381, 144 N. W. 972.

It may be said that negligence, or the absence of negligence, is generally a question of fact to be submitted to a jury. We grant it is always so if the facts in evidence tending to prove or disprove negligence are in conflict, or, the facts not being in conflict, rational minds may draw different conclusions therefrom. *Valin* v. *Milwaukee & N. R. Co.,* 82 Wis. 1, 33 Am. St. Rep. 17, 51 N. W. 1084; *Herbert* v. *Southern Pacific Co.,* 121 Cal. 227, 53 Pac. 651; *Railroad Co.* v. *Stout,* 17 Wall. 657, 21 L. Ed. 745 (see also, Rose's U. S. Notes). The very announcement of this rule, however, implies another which is well stated as follows:

"In cases involving questions of negligence, the rule is now settled that, where the facts are undisputed, and the inferences which may be drawn from them are not equivocal and can lead to but one conclusion, the court will adjudge, as matter of law, that there is or is not negligence." *Shoner* v. *Penn. Co.*, 130 Ind. 170, 177, 28 N. E. 616, 618, 29 N. E. 775.

Whether a case falls within the one rule or the other depends on its own particular facts, but when its status is determined the duty of the court is clear. If a plaintiff, in the presentation of his case, lays bare a state of facts that conclusively demonstrates that the accident causing the injury or death was due to the negligence of the person injured or killed, and that the accident would not have happened if he had exercised due care and caution, the elements of disputed facts and equivocal inferences are eliminated from the case, and nothing is left to be decided but a pure question of law. That, we think, is this case. The defendant's evidence did not change or affect the evidence introduced by plaintiff, but was in corroboration of it, and when all the evidence was in, and the motion for an instructed verdict was made, there was no dispute as to how or why the accident happened. This is not the case the Supreme Court had in mind when it said:

"Certain facts we may suppose to be clearly established from which one sensible, impartial man would infer that proper care had not been used, and that negligence existed; another man, equally sensible and equally impartial, would infer that proper care had been used, and that there was no negligence. It is this class of cases, and those akin to it, that the law commits to the decision of a jury. Twelve men of the average of the community, comprising men of education and men of little education, men of learning and men whose learning consists only in what they have themselves seen and heard, the merchant, the mechanic, the farmer, the laborer; these sit to-

gether, consult, apply their separate experience of the affairs of life to the facts proven, and draw a unanimous conclusion. This average judgment thus given it is the great effort of the law to obtain." *Railroad Co.* v. *Stout, supra.*

The present case falls more nearly within the other extremes instanced by that learned court as follows:

"If a sane man voluntarily throws himself in contact with a passing engine, there being nothing to counteract the effect of this action, it may be ruled as a matter of law that the injury to him resulted from his own fault, and that no action can be sustained by him or his representatives. So if a coach driver intentionally drives within a few inches of a precipice, and an accident happens, negligence may be ruled as a question of law." Id.

We think it was the clear and undoubted duty of the court to grant the motion for an instructed verdict upon both grounds urged, and since in no view of the evidence is the plaintiff entitled to recover, the cause is remanded, with directions to dismiss complaint.

BAKER, J., concurs.

CUNNINGHAM, C. J. (Dissenting.)—I do not concur in the order vacating the judgment and directing the dismissal of the action. I concur in holding that the record contains no substantial evidence of plaintiff's loss. In *Calumet & Arizona Min. Co.* v. *Chambers,* 20 Ariz. 50, 176 Pac. 839, we pointed out that, in actions based on this employers' liability law, the plaintiff is required to prove the actual loss sustained proximately caused by the accident. In *Arizona Copper Co.* v. *Burciago,* 20 Ariz. 85, 177 Pac. 29, we defined "damages," as used in paragraph 3158, as having reference to and meaning all loss to the employee which is actually caused by the accident, and the amount of which is susceptible of ascer-

tainment, excluding all speculative, exemplary, and punitive damages.

A failure to ascertain the amount of such damages is, of course, a failure to show liability. Failure of proof of loss is a failure to ascertain the amount of loss actually suffered by the plaintiff. Hence plaintiff failed to present a right to recover, and defendant's motion to so direct the jury was good. The court committed reversible error by denying such request and motion. For this error, appellant is entitled to have the judgment vacated, and a new trial awarded it.

I do not agree with Judge ROSS' finding that this record presents a clear, indisputable case of negligence of the employee killed, as the sole, direct and proximate cause of the employee's death. Fair minds will agree that Jesse T. Gardner failed to observe a reasonable degree of caution when he attempted to close the switch. Without room for doubt, his careless act in reaching for the switch handle was an efficient, proximate cause of his death; but was such negligent act the sole cause of his death?

The appellee contends that such careless act of the deceased, combined with the negligence of the appellant, directly caused the accident and injury. As a consequence, the appellee contends, the careless act of the deceased amounted, at most, to contributory negligence, and a recovery is therefore authorized. The appellee contends that the failure of the appellant to furnish the employee safe appliance with which to perform the duties assigned the employee is negligence, and appellee points out that the switch in question was not safe, and grounded electric wires, necessitating the use of the switch, enhanced the danger to the employee while actually performing his duties. Of course, an employer is not required

to furnish appliances that are absolutely safe and harmless, without regard to the manner of use the employee adopts, yet negligence is a fact to be found by the jury from the evidence in the case, and not a matter of law to be determined by the court.

It was for the jury to determine from all the testimony before them whether the employer had, in fact, discharged its duty to Jesse Gardner by furnishing him reasonably safe appliances to perform the duties of his occupation. I can see room for different conclusions to be reached from all the evidence in the record on this question. I am unable to concur in the principal opinion that this is a case wherein the deceased is shown, as a matter of law, to have met his death from his own unquestioned and unquestionable negligence—that his own negligence was the sole cause of the accident and death of Jesse T. Gardner. I am convinced that the evidence fails to show any loss to the father of Jesse T. Gardner, resulting from the death of Jesse. The consideration of all other alleged errors is wholly unnecessary to the disposition of this appeal.

I am, for that reason, of the opinion that the proper order justified is that the judgment be reversed and the cause remanded for a new trial.