J. T. DOOLEY v. SEABOARD AIR LINE RAILWAY COMPANY.

(Filed 12 November, 1913.)

1. **Statutes—Federal Employer's Liability Act—Interpretation.**

  Where the Federal Employer's Liability Act of 1908, as amended in 1910, in an action brought in the State courts to recover damages for a wrongful death, is set up and relied upon in the State courts, the courts of the State will follow the interpretation put upon it by the Supreme Court of the United States.

2. **Same—"Dependency."**

  The Federal Employer's Liability Act of 1908, as amended in 1910, gives a certain right of recovery to the employee for an injury caused by the carrier's negligence in whole or in part, while the former is engaged in his duties relating to interstate commerce, etc., and "in case of death of such employee, to his or

her personal representatives, for the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee," etc. *Held*, it is only necessary to show "dependency" of the beneficiary on the deceased, when his personal representative sues for damages, under the act, in behalf of the remote relatives, termed by the act, "next of kin"; and not when the beneficiary is the parent, or in the same classification, such as the "surviving widow or husband and children of such employee."

### 3. Same—Measure of Damages—Trials—Evidence.

Where the father of an employee of a common carrier is entitled to recover for the death of the deceased, caused by the carrier's negligence, under the Federal Employer's Liability Act of 1908, it is for a reasonable expectation of pecuniary benefit from the continuance of the life of the son; and evidence to sustain an action for such recovery is held sufficient and within the rule, if it tends to show that the deceased was a young man of good habits and character, in good health, and had helped his father and was disposed to give him his last cent if he needed it; that the father was growing old, and while not actually dependent on the son for support at the time of the latter's death, he could not tell how soon he might be. And it is further held, that the amendment of 1910 does not affect this construction, for with reference to the original act, so far as it applies to this case, it only declares that the right of action given therein shall survive.

### 4. Same—Instructions.

Where the father of a deceased employee has been brought within the rule necessary for a recovery, by the personal representative, in an action brought under the provisions of the Federal Employer's Liability Act, it is error for the trial judge to instruct the jury that the measure of his damages is for the loss of life of the intestate estimated at the present value of his net income for the period of expectancy as ascertained by them, after deducting the cost of living, etc., for in such instances a recovery can only be had for a reasonable expectation of pecuniary benefits to the father from the continued life of the son, under the evidence, for that period.

APPEAL by defendant from *Justice, J.*, at March Term, 1913, of NEW HANOVER.

This is an action brought under the Federal Employer's Liability Act of 1908, as amended in 1910, to recover damages for wrongful death.

The first section of the act of 1908 is as follows:

"SEC. 1. That every common carrier by railroad while engaging in commerce between any of the several States' or Territories, or between any of the States and Territories, or between the District of Columbia and any of the States or Territories, or between the District of Columbia or any of the States or Territories and any foreign nation or nations, shall be liable in damages to any person suffering injury while he is employed by such carrier in such commerce, or, in case of the death of such employee, to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee, for such injury or death resulting in whole or in part from the negligence of any of the officers, agents, or employees of such carrier, or by reason of any defect or insufficiency, due to its negligence, in its cars, engines, appliances, machinery, track, roadbed, works, boats, wharves, or other equipment."

The amendment of 1910 leaves this section as it is in the original act, and adds a new section to the act as follows:

"SEC. 9. That any right of action given by this act to a person suffering injury shall survive to his or her personal representative, for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then of the next of kin dependent upon such employee; but in such case there shall be only one recovery for the same injury."

The plaintiff's intestate was 23 years of age at the time of his death, was unmarried, and left surviving him a father and mother.

The evidence shows that he was a young man of good character and good habits, and that he was strong, healthy, and industrious.

The father testified as follows: "I am foreman for the Tidewater Power Company, track work and trestle work. I think I have been employed there now about 12 years, and am constantly employed. I get fair wages, $100 a month. At present I am not dependent on my son, but I might be in a few years.

At present I would be glad to get whatever help I can get. I was not dependent on my son at the time of his death. He never did leave me, but I think he was about 21, as well as I remember, when he began to work for himself. He went to work for the Seaboard at Monroe. His age had nothing to do with his leaving, though. Up to the time he was 21, he gave me money when I needed it. If I happened to be short, he would help me sometimes; if I needed money, he would give it to me—the last cent of it. He could not come home but about every six months; possibly he would come home in a space of about three months; I am not sure about that. He had to come when they let him off."

His Honor charged the jury on the measure of damages that "The measure of damages for loss of life of plaintiff's intestate is the present value of his net income, and this is to be ascertained by deducting the cost of living and expenditure from his net gross income, and then estimating the present value of the accumulation from such net income, based upon this expectation of life." The defendant excepted.

The defendant moved to nonsuit the plaintiff upon the ground that it was neither alleged nor proven that the father and mother were dependent on the son.

The motion was overruled, and the defendant excepted.

There was a verdict and judgment in favor of the plaintiff, and the defendant excepted and appealed.

*J. O. Carr for plaintiff.*
*J. D. Bellamy & Son for defendant.*

ALLEN, J., after stating the case: The appeal presents two questions for decision:

1. Can an action be maintained for the benefit of the father under the Federal Employer's Liability Act for the wrongful death of an adult son, without alleging and proving that the father was dependent on the son?

2. If the action can be maintained, did his Honor instruct the jury correctly as to the measure of damages?

Both questions would be answered in the affirmative if we were dealing with an action under the statute of this State, but

the action is brought under the Federal statute, and in so far as it has been construed by the Supreme Court of the United States, we are bound by that construction.

We are referred by counsel for the defendant to three recent decisions of that Court, which he insists support his position that dependency must be alleged and proven in all cases: *Mich. Cent. R. R. v. Vreeland,* 227 U. S., 54; *Am. R. R. Co. v. Didricksen,* 227 U. S., 145; *Gulf Col. and Santa' Fe R. R. v. McGinnis,* 228. U. S., 173.

The question was not raised or decided in either case, that the word "dependent" in the first section of the act of 1908 refers to the beneficiaries named in the statute as well as to the next of kin; and while expressions appear to the effect that it was the purpose of the act to give a right of action to dependent relatives, it is distinctly held that the right of action exists in favor of those named in the statute, other than the next of kin, if there is a reasonable expectation of pecuniary benefit from the continuance of life, although prospective.

In the *Vreeland case,* which was an action for the benefit of the wife on account of the death of her husband, the Court says: "The pecuniary loss is not dependent upon any legal liability of the injured person to the beneficiary. That is not the sole test. There must, however, appear some reasonable expectation of pecuniary assistance or support of which they have been deprived. . . . The rule for the measurement of damages must differ according to the relation between the parties plaintiff and the decedent, 'according as the action is brought for the benefit of the husband, wife, minor child, or parent of minor child, for the loss of services or support to which the beneficiary was legally entitled, or is brought for the benefit of a person whose damages consist only in the loss of a prospective benefit to which he was not legally entitled.' "

In the *Didricksen case:* "The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable expectation of pecuniary benefits by the wrongful death of the injured employee," and this language is approved in the *McGinnis case.*

It would seem, then, that the construction placed upon the act by the Supreme Court of the United States is that the

action may be maintained in behalf of widow, or husband, or children, or parents, upon proof of a reasonable expectation of pecuniary benefit; and that when it is for the benefit of others as next of kin, there must be proof of dependency.

It may be doubted whether the courts should limit and qualify the right of action for the benefit of the widow, etc., when the statute does not do so, and when the effect is to narrow the scope of the act passed for the protection of employees, so that under this construction in most cases the amount of recovery will be greatly reduced, and in many it will be nominal; but however this may be, the language will not permit the construction that the word "dependent" relates to any of the beneficiaries except the next of kin.

In the first section, after declaring the liability of the employer to the injured employee, it adds: "or in case of the death of such employee, to his or her personal representatives, for the benefit of the surviving widow or husband and children of such employee; and if none, then of such employee's parents; and if none, then the next of kin dependent upon such employee, for such injury or death," etc.

The beneficiaries are divided into three classes, and it is only when there is no one belonging to the first and second classes that an action may be maintained in behalf of more remote relatives—next of kin—and they must be dependent.

If, then, the parent may maintain an action for the wrongful death of his son, although not dependent, if he has a reasonable expectation of pecuniary benefit from the continuance of his life, what is the meaning of this phrase, and how may the fact be proven?

We follow the precedent set by *Mr. Justice Lurton,* who said in the *Vreeland case:* "The statute in giving an action for the benefit of certain members of the family of the decedent is essentially identical with the first act which ever provided for a cause of action arising out of the death of a human being, that of 9 and 10 Victoria, known as Lord Campbell's Act," and who had recourse to the decision upon the English statute and upon like statutes in different States to ascertain the meaning of the Federal statute.

One of the earliest cases by the English Court is *Franklin v. Southeastern R. R. Co.,* 4 Hurl. and N., 511, in which *Pollock, J.,* says: "It is also clear that the damages are not to be given merely in reference to the loss of a legal right, for they are to be distributed among relations only, and not to all individuals sustaining such a loss; and accordingly the practice has not been to ascertain what benefit could have been enforced by the claimants, had the deceased lived, and give damages limited thereby. If, then, the damages are not to be calculated on either of these principles, nothing remains except that they should be calculated in reference to a reasonable expectation of pecuniary benefit, as of right or otherwise, from the continuance of the life. Whether the plaintiff had any such reasonable expectation of benefit from the continuance of his son's life, and if so, to what extent, were the questions left in this case to the jury. The proper question then was left, if there was any evidence in support of the affirmative of it. We think there was. The plaintiff was old and getting infirm; the son was young, earning good wages, and apparently well disposed to assist his father, and in fact he had so assisted him to the value of 3s. 6d. a week. We do not say that it was necessary that the actual benefit should have been derived; a reasonable expectation is enough, and such reasonable expectation might well exist, though from the father not being in need, the son had never done anything for him."

This case was approved in *Dalton v. S. E. Railway Co.,* 4 C. B. N. S., 303, and the latter case was cited with approval by *Lord Haldane,* during the present year, in *Taff Vail Ry. Co. v. Jenkins* (1913), A. C., 1, in which he says: "The action is brought under Lord Campbell's Act by the father on behalf of himself and the mother for damages for the loss of the daughter. Now, we have heard a good deal of authority cited as to what the foundation of such an action is, but I do not think there is much difficulty in coming to a conclusion as to the principle which underlies those authorities. The basis is not what has been called *solatium,* that is to say, damages given for injured feelings or on the ground of sentiment, but damages based on compensation for a pecuniary loss. But this loss may be

prospective, and it is quite clear that prospective loss may be taken into account. It has been said that this is qualified by the proposition that the child must be shown to have been earning something before any damages can be assessed. I know of no foundation in principle for that proposition, either in statute or in any doctrine of law which is applicable; nor do I think it is really established by the authorities, when you examine them. As regards the judgment in the court below, I have already indicated that in my view the real question is that which *Willis, J.,* defines in one of the cases quoted to us, *Dalton v. Southeastern Ry. Co.* (1): 'Aye or No, was there a reasonable expectation of pecuniary damages?' "

These English cases decide that an action may be maintained for the benefit of the parent for the wrongful death of an adult son, when there is a reasonable expectation of pecuniary benefit from the continuance of the life of the son, and that it is not necessary to prove that the son has contributed to the support of the parent in order to establish such reasonable expectation, and the American authorities support the same position.

In Tiffany on Wrong. Death (2d Ed.), sec. 159, the author says: "The loss which a man suffers by the death of a relative may be the loss of something which he was legally entitled to receive, or may be the loss of something which it was merely reasonably probable he would receive. The first description of loss is principally confined to a husband's loss of his wife's services, a wife's loss of her husband's support and services, a parent's loss of the services of a minor child, and a minor child's loss of the support of a parent. But the statutes do not confine the benefit of the action to husbands, wives, minor children, and parents of minor children; and hence a person entitled to the benefit of the action may recover damages for the loss of a pecuniary benefit to which he was not legally entitled, but which it is reasonably probable he would have received except for the death. The second description of loss includes the loss by the beneficiary of any pecuniary benefit which he might reasonably have expected to receive during the lifetime of the deceased by gift, and also the loss of any accumulations which it is probable that the deceased would have added to his estate

had he lived out his natural life, and which the beneficiary would probably have received by inheritance. Thus the second description of loss may be divided into (1) losses of prospective gifts, and (2) losses of prospective inheritance. The loss sustained by a husband, wife, minor child, and parent of a minor child may be of both descriptions. The loss sustained by an adult child, parent of an adult child, or collateral relative, can only be of the latter description." The following cases, among others, support the text: *Greenwood v. King*, 82 Neb., 22; *Hillebrand v. Stans. Bis. Co.*, 139 Cal., 236; *Duekman v. R. R.*, 237 Ill., 108; *R. R. v. Kindred*, 57 Tex., 498; *Hopper v. R. R.*, 155 Fed. Rep., 277.

In the last case (*Hopper v. R. R.*) the action was brought in Colorado for the benefit of the father for the wrongful death of his daughter, 19 years of age, but an adult under the laws of Colorado, who had never contributed to the support of the father, and *Mr. Justice Van Devanter,* then Circuit judge, said: "Another reason assigned by the Circuit Court for directing a verdict for the defendant was that there was no evidence of any pecuniary injury to the plaintiff from the death of the daughter. In substance, the evidence was as follows: When the deceased was 2 years old, the mother died at the family home in Texas, and shortly thereafter the child was taken by the father to an aunt near Greenfield, Mo., with whom she lived until she was 16. He then sent her to a school at Parkville, Mo., that she might prepare herself for teaching, and he paid the expenses incident thereto. She had been in this school three years and was on a visit to a sister in Colorado when she met her death. She was sympathetic, ambitious, industrious, of good health, fond of her father, and wanted to keep house for him, but had not as yet rendered any service to him or made any contribution to his support. After the mother died, the father continued to reside in Texas, but broke up housekeeping. He was chiefly engaged as a traveling machinist, and sometimes as a farm laborer; his earnings being about $50 per month. He had not married again, and was 60 years old. Considering this evidence in the light of natural influence or prompting of filial ties, we think it would have sustained a

finding that there was a reasonable expectation of substantial, though not large, pecuniary benefit to the father from a continuance of the life of the daughter. *Pierce v. Connors,* 20 Col., 178, 182; 37 Pac., 721; 46 Am. St. Rep., 279; *Gibson Co. v. Sharp,* 5 Col. App., 321, 327; 38 Pac., 850; *Swift & Co. v. Johnson,* 71 C. C. A., 619; 138 Fed., 867."

The evidence meets fully this rule of the English and American courts. The deceased was, according to the evidence, strong, healthy, intelligent, and industrious, and he was a young man of good habits and good character.

He had helped the father and was so disposed to him that he would give him his last cent if the father needed it, and the father was growing old, and while not actually dependent on the son for support at the time of death, he did not know how soon he might be.

This furnishes sufficient evidence to sustain a finding that the father had a reasonable expectation of pecuniary benefit from the continuance of the life of the son, and the motion for judgment of nonsuit was, therefore, properly denied.

We do not think the amendment of 1910 affects this action one way or the other, and we forbear discussing it further than to say that it does not purport to deal with any causes of action except those given by section 1, and that it declares that "the right of action given by this act to a person suffering injury shall survive."

The rule for the assessment of damages laid down by his Honor, while following the decisions of this Court in the construction of Lord Campbell's Act, is erroneous as applied to the Federal Employer's Liability Act, as construed by the Supreme Court of the United States.

In *American R. R. v. Didricksen,* 227 U. S., 145, that Court says: "The cause of action which was created in behalf of the injured employee did not survive his death, nor pass to his representatives. But the act, in case of the death of such an employee from his injury, creates a new and distinct right of action for the benefit of the dependent relatives named in the statute. The damages recoverable are limited to such loss as results to them because they have been deprived of a reasonable

---

*In re* SMITH'S WILL.

expectation of pecuniary benefits by the wrongful death of the injured employee. The damage is limited strictly to the financial loss thus sustained."

This language was quoted with approval in *R. R. v. McGinnis,* 228 U. S., 175, and the Court adds in the last case: "In a series of cases lately decided by this Court, the act in this aspect has been construed as intended only to compensate the surviving relatives of such a deceased employee for the actual pecuniary loss resulting to the particular person or persons for whose benefit an action is given. The recovery must therefore be limited to compensating those relatives for whose benefit the administrator sues, as are shown to have sustained some pecuniary loss."

There must, therefore, be a new trial on the issue of damages. Partial new trial.