AT THE

### OCTOBER TERM, 1919.

JAMES McCORD, Administrator of Estate of ORVIS McCORD, v. CHARLES E. SCHAFF, Receiver of Missouri, Kansas & Texas Railway Company, Appellant.

Division Two, October 14, 1919.

1. **NEGLIGENCE: Engineer: Vice-Principal.** The engineer operating a locomotive engine on defendant's railroad is a vice-principal of defendant, and if his conduct in failing to supply with sufficient water the boiler of the engine which exploded amounted to negligence, contributing in whole or in part to the death of the fireman, the defendant is liable in damages, because the engineer's negligence was the defendant's negligence.

2. ———: ———: **Defective Appliances: Irrelevant: Allegata et Probata.** If the action for damages was tried on allegations that it was the duty of the engineer in charge of the engine which exploded to see that it was properly supplied with water, that he negligently failed to perform that duty, that such failure was the proximate cause of the explosion of the boiler and that the death of the fireman resulted from such negligence, defective appliances could not affect the case, and expert testimony and speculation as to whether the appliances for supplying water to the boiler were defective were irrelevant; but, it being conceded that the explosion was due to an insufficient amount of water in the boiler, the whole issue, under such charge, was whether it was the duty of the engineer to see to it that the boiler was properly supplied.

3. ———: ———: **Supplying Boiler With Water.** There being no evidence beyond the merest speculation that the fireman who was killed when the engine exploded for lack of water had made any attempt to pump water into its boiler, or had asked or been directed to do so, and it being the unquestioned duty of the engineer to pump it, the engineer's failure to do so, thereby causing the explosion and the death of the fireman, was a negligent act, for which the railroad company must respond in damages.

4. ———: ———: ———: **Failure to Call Witness With Knowledge.** The failure of a party to call witnesses within his power who know vital facts affecting the issue on trial is to be taken as a strong circumstance against him. So where a locomotive engine exploded because of a lack of a proper amount of water in its boiler and such explosion caused the death of the fireman, and the main issue at the trial was whether it was the duty of the engineer to see to it that the boiler was properly supplied with water, the fact that the railroad company, when sued for damages by the fireman's father, did not call the engineer, or a student fireman who was on the engine, neither of whom was injured, or account for its failure to call them, is a strong circumstance against the defendant, in the absence of any testimony that the fireman was directed or asked or assumed to pump water into the boiler.

5. ———: **Damages: Compensation: Life Expectancy of Plaintiff.** An instruction on the amount of damages which a plaintiff may recover as compensation for the negligent death of another is erroneous which bases the damages solely on the life expectancy of the deceased and does not require the jury to take into consideration the plaintiff's expectancy in determining said amount; and where a father sues for the loss of his adult son, the instruction should take into consideration the life expectancy of the father alone.

6. ———: ———: ———: **Prior Contributions.** In a suit by a father for compensation by way of damages for the negligent killing of his adult son, the testimony should develop the exact number of months the son contributed to the support of his parents, and the amount contributed each month, or in some other way establish an exact basis for calculating what the son would have contributed to their support during their life expectancy had he lived.

Appeal from Saline Circuit Court.—*Hon. Samuel Davis Judge.*

Reversed and remanded.

*J. W. Jamison* for appellant.

(1) The court erred in overruling defendant's peremptory instruction to find for the defendant. The specification of negligence on which plaintiff went to the jury was in substance and effect that the explosion was occasioned solely by the negligence of the engineer in failing to see that the engine was properly supplied with water. Plaintiff must stand or fall under the foregoing specific charge of negligence. Northam v. United Rys. Co., 176 S. W. 229; McNamee v. Ry. Co., 135 Mo. 447; Yall v. Gillham, 187 Mo. 408; Roscoe v. Ry. Co.,

202 Mo. 588; Kirkpatrick v. Ry. Co., 211 Mo. 83; Davidson v. Transit Co., 211 Mo. 361; Price v. Ry. Co., 220 Mo. 454; Applegate v. Ry. Co., 252 Mo. 197. (2) If the explosion resulted from defects in the water glass and gauge cocks or other appliances, plaintiff cannot recover, because he elected to abandon that theory and relied solely on alleged negligence on part of the engineer. Authorities supra; Cunningham v. Journal Co., 95 Mo. App. 47; Jones v. Cooperage Co., 134 Mo. App. 324; Armour & Co. v. Arbuckle, 123 C. C. A. 435. (3) The inference is clear that the low water in the boiler was due to the negligence of the fireman, and, therefore, plaintiff has no case. Va. Ry. Co. v. Linkous, 144 C. C. A. 386; Louisville Ry. Co. v. Short, 73 So. 17; Gr. Northern Ry. Co. v. Wiles, 240 U. S. 444. (4) The evidence was insufficient to justify the court authorizing the jury to award the father and mother of deceased any amount as compensation on the theory that they had sustained a substantial pecuniary loss on account of the death of their son. The evidence, at most, merely showed that the deceased son made only occasional gifts of small amounts to his father and mother. An occasional contribution from a son to a parent does not establish a condition of dependency. Bortel v Northern Pac. Ry. Co. 111 Pac. 788; Garrett v. Ry., 235 U. S. 313; Vining v. Rexford, 120 C. C. A. 418. (5) The evidence was not sufficient to authorize the giving by the court of plaintiff's instruction authorizing the assessment of any damages. Moreover, neither the facts nor the law warrant the giving of said instruction. No tables of mortality, or other evidence, were offered tending to show the expectancy of life of the deceased son. No proof was offered as to the expectancy of life of the father and mother of deceased to each of whom the jury in its verdict awarded damages in the sum of $5000. No evidence was offered of the present cash value of the future benefits of which the beneficiaries were deprived by the death, making adequate allowance according to the circumstances for the earning power of

money. Chesapeake & Ohio R. Co. v. Kelly, 241 U. S. 458; Stevens v. L. & P. Co., 208 S. W. 630; Smith v. Pryor, 195 Mo. App. 259; Jones v. Railroad, 78 So. 568. (6) The verdict of the jury in awarding the father and mother of deceased each the sum of $5000 was grossly excessive. Panhandle Ry. Co. v. Huckabee, 207 S. W. 329; Bagley v. St. Louis. 268 Mo. 259.

*Claude Wilkerson* and *E. P. Sizer* for respondent.

(1) It is claimed the evidence was not sufficient to justify an award of damages to the father and mother. The trouble with appellant on this point is that he starts with the erroneous assumption that the evidence "at most only shows occasional gifts." This might be true as to the "dress patterns" and gifts to the mother and sister, but not so of the monthly payments of five to fifty dollars—"and other times he would send every pay check; the largest amount was $50." "Then as he would have good or bad months it would range five, ten and twenty dollars per month." This is a substantial showing of pecuniary loss and should support the verdict. Railroad v. Callard, 185 S. W. 1108; Railroad v. Thome, 185 S. W. 840; Rains v. Railroad, 85 S. E. 294; Dooley v. Railroad, 79 S. E. 970. The case of Smith v. Pryor, 195 Mo. App. 259, cited and relied upon by appellant, is not in point, as deceased in that case left no children or parents and his only "next of kin" was a half sister, who had been married and was 47 years old. It is only when the action is prosecuted under the Federal Act for "next of kin" other than widow, children or parents, that it is necessary to show dependency of the beneficiaries. Dooley v. Railroad, 79 S. E. 970; Smith v. Pryor, 195 Mo. App. 264. (2) Appellant contends that it was error to give instruction 3 on measure of damages, because of the alleged failure to introduce the mortuary tables to show expectancy of the deceased and the parents. The case of Railroad v. Kelly, 241 U. S. 458, nowhere lays down the rule that the tables must be introduced.

36—279 Mo.

While such tables might be competent testimony under certain restrictions, they are not the absolute guide and are only advisory. Railroad v. Putnam, 118 U. S. 545. But as wise as are the judges of the Supreme Court of the United States, that court in the Kelly case, in the concluding paragraph, refuses to hazard even a guess at what should be the proper formula to submit to a jury the question of the pecuniary loss, and contents itself with subjoining an interminable list of decisions from the various states to show how hopelessly in conflict are the appellate courts. Railroad v. Kelly, 60 L. Ed. 1123. The next decision relied upon by appellant is the case of Stevens v. K. C. Light Co., 208 S. W. 630. This case is plainly authority for respondent instead of appellant, and shows the wisdom of refusing to follow such tables as absolutely guides. (3) Defendant is now precluded from raising any objection to the instruction on the measure of damages, because if he wanted a more definite instruction he should have requested such; and having failed to do so, is now precluded. Frisco v. Brown, 60 L. Ed. 970; Railroad v. Skaggs, 60 L. Ed. 531; Railroad v. Ernest, 60 L. Ed. 1100. When plaintiff's instructions are right as far as they go, the duty is on defendant to request more definite instructions before he will be permitted to convict the trial court of error. Browning v. Railroad, 124 Mo. 55; Minter v. Bradstreet, 174 Mo. 491; Smith v. Fordyce, 190 Mo. 31; Waddell v. Railroad, 213 Mo. 8; Armelio v. Whitman, 127 Mo. App. 698. (4) Under all the circumstances the verdict is fair and just and should not be disturbed. When we consider the value of all that McCord was doing for his parents, which was pecuniary, and that under the McCullough case, prospective gifts, etc., are elements of a pecuniary value to be taken into consideration by the jury, together with the natural increasing wants of the parents as age comes on apace, and the increasing ability of the son to support them, we respectfully claim the verdict is right and just. McCullough v. Railway, 160 Iowa, 524; Dooley

v. Railroad, 79 S. E. 970; Railroad v. Dyer, 172 S. W. 18.

MOZLEY, C.—This action was brought under the Federal Employers' Liability Act and seeks to recover damages on account of the death of Orvis McCord, who was a fireman on an engine and an inter-state employee of defendant. On the 4th day of July, 1916, the engine on which McCord was working as fireman, when about fifteen miles from Sedalia, Pettis County, Missouri, pulling an extra freight, exploded, and so injured McCord that he died a few hours later without regaining consciousness. The explosion occurred by reason of not having sufficient water in the boiler of the engine. In addition to the fireman, the engineer and a student fireman were on the engine at the time, but there is nothing in the record of any injury to either of them.

The petition was in two counts identical, except in count one it was sought to recover for alleged conscious pain between the time of the accident and the death of McCord a few hours later, but upon this count the jury found for the defendant. The second count was finally amended so that the cause of action was based upon the alleged negligence of the engineer in failing to see that said engine was supplied with sufficient water to the boiler to prevent an explosion. It is conceded, however, by both sides that the explosion happened because the water was allowed to get too low in the boiler to cover the crown shield.

At the time of the death of McCord he was 27 years of age, and the plaintiff, James McCord, was 56 years of age, and the mother, Laura McCord, 54 years of age. Trial of the case in the Circuit Court of Saline County where it had gone on a change of venue from Pettis County, after demurrer to the evidence had been overruled, resulted in a verdict for defendant on the first count of the petition, and a verdict for plaintiff on the second count in the sum of $10,000, apportioned

by the jury $5000 to plaintiff and $5000 to the mother. Motion for new trial was overruled and the cause is properly lodged in this court on appeal.

I. The engineer on the engine that exploded was vice-principal of the defendant, and if his conduct amounted to negligence contributing in whole or in part to the death of McCord, the defendant is bound thereby, because the engineer's negligence was the defendant's negligence. It is conceded that the explosion of the engine was caused by lack of sufficient water to cover the crown shield. A great

Engineer's
Negligence.

deal of speculation, expert testimony, etc., was indulged in as to whether the appliances for supplying water to the boiler were defective, but as the case was tried before a jury on a charge of negligence on the part of the engineer, in this, that he was in charge of said locomotive and that it was his duty to see that said engine was properly supplied with water, that he negligently failed to perform that duty and the explosion resulting in the death of McCord proximated from such negligence, we are unable to see how defective appliances (and they were not defective) could affect the case. The whole question as we see it is, was it the duty of the engineer to see that the boiler was properly supplied with water? (Incidentally we remark that the engineer did not testify at the trial, nor did the student fireman who was on the engine, although there is no evidence that either was injured). These appliances for furnishing water to the boiler were placed thereon by defendant for the express purpose of enabling the engineer, by their timely use, to avoid the catastrophe that happened. Under the rule of the defendant, No. 502, the dead fireman was under the direction and control of the engineer. The rule reads:

"Firemen when on the road, are under the supervision and direction of the engineer, and must obey the orders of the engineer respecting the proper use of fuel and the performance of their duties."

As to whose duty it was, under the rule, to pump water to the boiler the following appears in the testimony of William Rothmeyer, road foreman of engineers for defendant:

"Q.    What about pumping water?    A.  That is conditional with the engineer and fireman.  We haven't placed any restrictions on the fireman pumping the engine.  If the fireman is qualified and the engineer wants to assume the responsibility of him pumping that engine, why, that is optional with the two, and if he asks to pump the engine he can do so."

There is no evidence beyond the merest speculation that the dead fireman had made any attempt to pump water into the boiler or that he was directed to do so, or that he asked to pump said engine or assumed to do so, and it being the unquestioned duty of the engineer to pump it, his failure to do so, thereby causing the explosion and the death of McCord, was a negligent act for which defendant is responsible.

As stated above, neither the engineer nor the student fireman who were on the engine when the explosion occurred, was called by defendant as a witness at the trial of the case, notwithstanding each of them was in possession of the facts of the explosion and the movements of the deceased fireman just preceding the explosion.  It has been held that failure of a party to call witnesses within his power who know vital facts affecting the issue upon which the case is tried, is taken as a strong circumstance against such party.  [Reyburn v. Railroad, 187 Mo. 565, l. c. 575;  McClanahan v. Railroad, 147 Mo. App. 386, l. c. 411;  Evans v. Trenton, 112 Mo. l. c. 404.]

Without pursuing this feature of the case further, we think there was sufficient evidence to go to the jury on the question of whether or not the engineer was negligent and their finding that he was negligent ought not to be disturbed.

II.  A great many points are urged by appellant for a reversal of the case which are unnecessary to dis-

cuss or decide, since under our view it will have to be reversed and remanded on account of a vital-

**Damages.**

ly improper instruction given to the jury on behalf of plaintiff, on the measure of damages,   Said instruction reads as follows:

"If you find the issues for the plaintiff under the second count of the petition you should, in assessing the damages, take into consideration the age and earning capacity of the deceased and the amounts, if any, that he had been contributing to his parents, and you should give such sum as you may believe to be a fair and just compensation, for whatever sum you may believe from the evidence the said Orvis McCord was reasonably certain to have contributed to his parents had he not been killed, and such a sum should be sufficient to compensate them for the pecuniary loss, if any, they have sustained by reason of the death of the said Orvis McCord, but not to exceed the sum of twenty thousand dollars, the amount prayed for in the petition."

The damages authorized to be recovered by this instruction are based solely on the expectancy in life of deceased, and does not take into consideration the expectancy in life of the plaintiff, or in anywise advise the jury that plaintiff's expectancy is a matter necessary to take into consideration in determining what the amount of the verdict should be. It has been held in a number of cases which we think were well considered that the expectancy of the plaintiff must be determined by the jury and that failure to do so is error.

Under the proof in this case the expectancy of the plaintiff was vastly less than that of deceased, and it, therefore, became vital to a just verdict that the damages assessed be based upon the expectancy of plaintiff rather than upon that of deceased.

In the case of Illinois Central Railroad Co. v. Crudup, 63 Miss. 291, l. c. 303, it was held that the expectancy that the one who, according to the course

of nature, would die first was the one upon which the damages awarded should be based. The court said: "If it be shown that the deceased in the course of nature would have died first, his expectation of life should control, for he could confer no benefit after his death; on the other hand, if the next of kin would die first, his expectation should govern, for he could not receive a benefit from any one after his death. Since the plaintiff, the father of deceased, would by all known probabilities have died in the course of nature before his son, his expectancy and not that of the son should control."

In the case of Stevens v. K. C. Light & Power Co., 208 S. W. 630, l. c. 631, the cause was reversed and remanded, and we think properly so, on account of an instruction given to the jury by the court below. That instruction, like the one under consideration, made the basis of recovery the expectancy in life of deceased, wholly ignoring the expectancy of the plaintiff. The court (Kansas City Court of Appeals) passing on that instruction said: "There is this further objection to the instruction. It bases the damages to plaintiffs on the expectancy of life of the deceased alone, when in fact the expectancy of life of the plaintiff must also be considered. Her damages consisted in the loss of deceased's support. There are two lives to be considered, hers and her deceased husband's. She was only entitled to damages estimated on the length of his life, if she lived longer than he, for no damages could accrue to her after her death. The husband's duty to support his wife ceases, of course, at her death. Therefore her loss in his death cannot reach beyond her own life."

The jury was not advised, or directed as they should have been by the instruction under consideration, that the verdict should have been based solely on the expectancy in life of plaintiff, since, as above pointed out, his expectancy was vastly less than that of deceased and, according to the course of nature, he would

die first.  But it is manifest that the jury did base its
verdict upon the wrong expectancy, without giving
plaintiff's expectancy any consideration whatever.  This
is made certain by the grossly excessive amount of
damages awarded.  Plaintiff was 56 years of age, his
expectancy in life was, therefore, according to recog-
nized mortality tables, 16.89 years.  The extent of his
right to recover was the support (in money) deceased
would probably have given him during the life of his
expectancy had not deceased lost his life.

What the record shows deceased had already given
does not enter into the matter except in so far as it
gives a basis to reckon from as to what future con-
tributions may have been.  This court will take judicial
notice of many things, but we think this rule has never
been so far extended in its application as to include
matters known only to the plaintiff, matters which are
vitally necessary to him by way of proof in making
his case.  We say this, because there is in the record
nothing of certainty, disclosing what the monthly con-
tributions were.  It is passing strange that plaintiff who
knew all the facts, and his counsel who questioned him
on the witness stand, *did not develop by the testimony
the exact number of months during which no donations
were made and the exact number of months during which
donations were made and the amount each month* and
thus not have left the court to grope in darkness over a
vital matter which it could not possibly know anything
about save what the record so meagerly discloses.  The
plaintiff furnished the whole of the testimony as to these
donations, as follows:

"Well, now, the amount of money he sent me would
depend entirely upon the amount of business on the road
and the amount of salary he was drawing; some months
he would not send anything; one month he sent $50,
sometimes he would $20, sometimes $10, and sometimes
$5."

Further than this the record is absolutely barren.
How many months during the year he sent nothing the

record does not tell. How many months he sent $20, $10, or $5, the record is likewise silent, and we are left in the dark without means of knowing the truth of the matter. We have no right to guess at it, since, as before stated, it was a part of plaintiff's proof which was highly important to make clear by his testimony. We are not justified in guessing at it for him, nor will we do so. The record, so far as the proof justifies a statement, discloses a donation of $85 a year to the plaintiff, these being the amounts named by the plaintiff as having been contributed. This sum multiplied by plaintiff's expectancy equals $1435.65, and thus it is seen that the verdict returned was not only reckoned from the wrong basis, but in addition, as above stated, is grossly excessive. The jury not having been advised properly by the instruction supra, the verdict returned results in a miscarriage of justice and should be reversed and remanded. It is so ordered.

*Railey, C.,* not sitting;   *White, C.,* concurs.

PER CURIAM:—The foregoing opinion of Mozley, C., is hereby adopted as the opinion of the court; *Walker* and *Faris, JJ.,* concur; *Williams, P. J.,* dissents.