[Civ. No. 3853.   Second Appellate District, Division Two.—July 11, 1922.]

ROY B. GRIFFEY et 'al., Appellants, v. PACIFIC ELEC-
TRIC RAILWAY COMPANY (a Corporation), Re-
spondent.

[1] APPEAL — ORDER GRANTING NEW TRIAL — SETTING ASIDE OF JUDG-
MENT—AUTHORITY OF COURT—QUESTION NOT REVIEWABLE.—On an
appeal from an order granting a new trial, the question of the
authority of the trial court to set aside a judgment and direct the
entry of a second judgment within twenty-four hours after verdict
cannot be considered, since whichever judgment was legally in force
prior to the time when the new trial was ordered fell with the
order.

[2] NEW TRIAL—EXCESSIVE DAMAGES—STATEMENT IN ORDER—EFFECT
OF.—The statement in an order granting a new trial that the
motion is granted on the ground of "excessive damages" is tanta-
mount to a specification that the motion is granted on the ground
of the insufficiency of the evidence to sustain the verdict, re-
gardless of whether the order is made under subdivision 5 or 6 of
section 657 of the Code of Civil Procedure.

[3] NEGLIGENCE — ACTION FOR DEATH — EXCESSIVE DAMAGES — NEW
TRIAL.—A trial judge has the right to grant a new trial in an
action for damages for death brought under section 377 of the
Code of Civil Procedure when he deems the damages awarded by
the jury to be excessive, notwithstanding the declaration in the
section that such damages may be given as under all the circum-
stances of the case may be just.

[4] APPEAL—ORDER GRANTING NEW TRIAL—EXCESSIVE DAMAGES—RE-
VERSAL OF JUDGMENT. — When the action of the trial judge in
granting a new trial on the ground of excessive damages comes
before an appellate court, the order will not be reversed unless
it plainly appears that the trial judge abused his discretion.

[5] NEGLIGENCE—ACTION FOR DEATH—DAMAGES—PECUNIARY LOSS.—
In an action for damages for death brought under section 377 of
the Code of Civil Procedure, the damages must be limited strictly
to the pecuniary loss to the beneficiaries caused by the wrongful
death.

[6] ID.—NATURE OF PECUNIARY LOSS.—The pecuniary loss to which
beneficiaries are limited in actions for wrongful death may be a
loss arising from a deprivation of something to which the stat-
utory beneficiaries would have been legally entitled if the person
had lived, or it may be a pecuniary loss arising from the depriva-
tion of something which, from all the circumstances of the
particular case, it could reasonably be expected such beneficiary

would have received from the deceased had his life been taken, even though the obligation resting on the deceased to bestow such benefit may have been but a moral obligation.

[7] ID.—DEATH OF ADULT CHILD—DAMAGES—EVIDENCE.—In an action by a parent for the death of an adult child, the measure of damages is the reasonable expectation of the parent of pecuniary benefit from the continuance of the life of the child, and the expectation must be based upon some fact or facts aside from the relationship, and there must be some evidence tending to show the competency and disposition on the part of the child to render service to the parent or to contribute to his aid.

[8] ID.—ESTIMATION OF DAMAGES—EXPECTANCY OF LIFE OF PARENT.— Although one of the elements of damage which may be suffered by the parent of an adult child for his wrongful death is the present value of such future financial assistance as the parent might reasonably expect from a continuance of the child's life, or the present value of such future services as the parent could reasonably expect to have received had the child lived, nevertheless, in estimating the amount of such damages, it is the expectancy of the life of the parent, not the life of the child, which is to be taken into consideration.

[9] ID.—LOSS OF SOCIETY—LIMITATION OF RECOVERY—PECUNIARY LOSS. While loss of society, comfort, and protection may be an element of the injury sustained by statutory beneficiaries from the wrongful death of another, it is only the pecuniary, and not the sentimental, value of such loss which may be taken into consideration in the assessment of damages, since nothing can be recovered as a *solatium* for wounded feelings.

[10] ID.—EXCESSIVE DAMAGES—NEW TRIAL—DISCRETION NOT ABUSED. In this action brought under section 377 of the Code of Civil Procedure by the surviving husband and the father and mother of a deceased person to recover damages for his wrongful death, there was no abuse of discretion in granting a new trial on the ground of excessive damages based upon the insufficiency of the evidence to sustain the verdict as to the amount awarded to the parents.

[11] ID.—VERDICT—AWARDS TO DIFFERENT BENEFICIARIES—EXCESSIVE AMOUNTS—NEW TRIAL.—A verdict in an action for wrongful death brought under section 377 of the Code of Civil Procedure must be for a single lump sum, the heirs having but a single joint cause of action, and the verdict should be set aside and a new trial granted whenever it can be seen from answers to special interrogatories that the jury has made an excessive award of damages in their assessment of the loss sustained by any one or more of the statutory beneficiaries.

7. Statutory right of parent to recover for death of adult child, note, L. R. A. 1916E, 190.

APPEAL from an order of the Superior Court of Los Angeles County granting a new trial. Charles Monroe, Judge. Affirmed.

The facts are stated in the opinion of the court.

Cooper, Collings & Shreve for Appellants.

Frank Karr, R. C. Gortner and W. R. Millar for Respondent.

FINLAYSON, P. J.—This is an appeal from an order granting defendant a new trial in an action wherein plaintiffs, as the heirs of Gladys Rhodes Griffey, a married woman, sue defendant, under section 377 of the Code of Civil Procedure, to recover damages for the death of Mrs. Griffey alleged to have been caused by the negligence of defendant. The plaintiff Roy Griffey is the surviving husband, and the plaintiffs Fred Rhodes and Margaret Rhodes are, respectively, the father and mother of the deceased. The jury returned a general verdict in favor of plaintiffs for the sum of ten thousand dollars, and likewise made answer to certain special interrogatories which had been submitted to them. The questions submitted and the jury's answers thereto were as follows: "1. Q. How much pecuniary damage, if any, do you find that Roy B. Griffey suffered by reason of the death of his wife? A. One thousand [dollars]. 2. Q. How much pecuniary damage, if any, do you find that Fred Rhodes suffered by reason of the death of the deceased? A. Eight thousand [dollars]. 3. Q. How much pecuniary damage, if any, do you find that Margaret Rhodes suffered by reason of the death of the deceased? A. One thousand [dollars]."

On the same day that the general verdict was rendered and the answers to the special questions were returned, the clerk entered a judgment against defendant for ten thousand dollars. This judgment made mention of the general verdict only. Within twenty-four hours after the rendition of the verdict, the trial court, on defendant's motion, vacated that judgment and entered a judgment against defendant which, after reciting the general verdict, the special interrogatories and the jury's answers thereto, ad-

judged that the husband of the deceased, Roy B. Griffey, recover of defendant the sum of one thousand dollars, that the father, Fred Rhodes, recover the sum of eight thousand dollars, and that the mother, Margaret Rhodes, recover of defendant the sum of one thousand dollars. Thereafter, and in due time, defendant moved for a new trial upon all of the statutory grounds. The order granting the motion states that it is granted "on the ground of excessive damages."

[1] It is objected that the court had no authority to set aside the first and direct the entry of the second judgment. Whether the court possessed the right to vacate the first judgment and cause the second to be entered was not a question which could be agitated on the motion for a new trial, and it is not a matter which can be considered on this appeal from the order granting the new trial. Whichever judgment was legally in force prior to the time when the new trial was ordered fell with the granting of the new trial.

[2] Because the order granting a new trial did not state in so many words that it was granted upon the ground of the insufficiency of the evidence to sustain the verdict, it is claimed that it must be presumed, on this appeal, that the evidence was sufficient to sustain the verdict for the full amount thereof—ten thousand dollars. This claim is based upon that provision of section 657 of the Code of Civil Procedure which, since the amendment of 1919 (Stats. 1919, p. 141), reads: "When a new trial is granted upon the ground of insufficiency of the evidence to sustain the verdict, the order shall so specify; otherwise, on appeal from such order it will be presumed that the order was not based upon that ground."

By subdivision 5 of section 657, "excessive damages, appearing to have been given under the influence of passion or prejudice," is made one of the grounds for a new trial; and by subdivision 6 "insufficiency of the evidence to justify the verdict" is made another ground for a new trial. An order granting a new trial on the ground of "excessive damages" necessarily is made under one or the other of these two subdivisions. Whether the order in the instant case was made under subdivision 6, that is, whether it was made on the ground that, irrespective of the influ-

ence of any passion or prejudice, the evidence fails to show that the pecuniary loss suffered by plaintiffs amounted to ten thousand dollars, or whether it was made under subdivision 5 on the ground that the verdict was influenced by passion and prejudice, in either case the statement in the order that it is made on the ground of "excessive damages" is tantamount to a specification that the new trial was granted on the ground of the insufficiency of the evidence to sustain a verdict for ten thousand dollars. If a new trial on the ground of "excessive damages" be granted under the sixth subdivision, it necessarily is granted on the ground of the insufficiency of the evidence to sustain a verdict for the amount awarded by the jury. If it be granted under the fifth subdivision, it is equally true that it is granted on the ground of the insufficiency of the evidence to sustain a verdict for an amount as great as that returned by the jury; for, as our supreme court has pointed out, to say that a verdict has been influenced by passion or prejudice is but another way of saying that it exceeds any amount justified by the evidence. (*Doolin* v. *Omnibus Cable Co.*, 125 Cal. 144 [57 Pac. 774]; *Graybill* v. *De Young*, 140 Cal. 327 [73 Pac. 1067]; *Zibbell* v. *Southern Pac. Co.*, 160 Cal. 254 [116 Pac. 513]. See, also, *Meinberg* v. *Jordan*, 29 Cal. App. 762 [157 Pac. 1005].) For these reasons there is no merit in the claim that on this appeal we are precluded from determining whether the trial court abused its discretion in granting a new trial on the ground that the damages are excessive.

[3] Because it is declared by section 377 that in actions of this character "such damages may be given as under all the circumstances of the case may be just," it is claimed that the amount of the award is exclusively a matter for the jury with which the trial judge may not interfere. There is not even the faintest semblance of merit in this point. There is no reason to believe that the legislature intended to place cases of this character in a special class with respect to the right of the trial court to grant a new trial upon any of the grounds enumerated in section 657 of the Code of Civil Procedure. The right of the trial judge to grant a new trial in this class of cases when he deems the damages awarded by the jury to be excessive has received the sanction of our supreme court in a number

of cases. See, for example, *Harrison* v. *Sutter Street Ry. Co.,* 116 Cal. 156 [47 Pac. 1019]. In *Bond* v. *United Railroads,* 159 Cal. 285 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 372]—an action by a mother to recover damages for the death of her son alleged to have been caused by the negligence of the defendant—Mr. Justice Shaw, speaking for the court, says: ''With regard to the danger of excessive verdicts . . . we can only say that the remedy is practically committed entirely to the judge who presides at the trial in the court below. If he does his duty he will carefully weigh the evidence himself and will not allow a verdict to stand for its full amount if he believes it gives more damages than the pecuniary loss that it may be reasonably supposed the plaintiff will actually suffer by being deprived of the services, earnings, society, comfort and protection of the child. . . . Juries should be insistently cautioned not to allow compensation for the sorrow and distress which always ensues from such a death, nor for a pecuniary loss which is remote or conjectural in the particular case. The trial court should be vigilant to set aside verdicts where there is reason to believe this has been done, or that passion, prejudice or sympathy has influenced the jury to give more than the facts reasonably warrant.''

[4] For the foregoing reasons the order granting a new trial must be affirmed unless we can say that the trial court abused its discretion. When the action of a trial judge in granting a new trial on the ground of excessive damages comes before an appellate court, the order will not be reversed unless it plainly appears that the trial judge abused his discretion. Every intendment is to be indulged here in support of his action, and it will not be disturbed if the question of its propriety is open to debate. (*Doolin* v. *Omnibus Cable Co., supra; Harrison* v. *Sutter Street Ry. Co., supra.*) And even though there be no conflict in the evidence as to the nature and extent of the pecuniary losses suffered by the plaintiffs, nevertheless, the probative force and effect of the evidence upon that phase of the case is ultimately for the determination of the judge of the trial court upon the hearing of the motion for a new trial. (*Meinberg* v. *Jordan, supra.*)

That the evidence in this case warranted the court in granting a new trial is clearly apparent. We know from the answers to the special interrogatories that the jury assessed the father's pecuniary loss at eight thousand dollars, the mother's at one thousand dollars, and the husband's at one thousand dollars. It is true that in this class of cases the code gives to the heirs a single joint cause of action, and that the verdict, if against the defendant, should be for a single lump sum (*Robinson* v. *Western States Gas Co.*, 184 Cal. 401 [194 Pac. 39]); but this is no reason why we may not look to the jurors' answers to the special interrogatories in order to determine how they arrived at a total of ten thousand dollars.

Nowhere in the record can we find anything to warrant the conclusion that the father suffered a pecuniary loss of eight thousand dollars, or that the mother's actual loss was as great as one thousand dollars. The sole evidence bearing upon the matters which were proper subjects for consideration in estimating the pecuniary damages resulting to plaintiffs from the death of Mrs. Griffey was the evidence given by the father, the plaintiff Fred Rhodes, whose testimony in that regard, stated in narrative form, is substantially as follows: "I am fifty-eight years old. I have lived in Los Angeles County a year. I did not do any business here until last February, when I went into a variety store on American Avenue, in Long Beach. Gladys Rhodes Griffey was my daughter. She was married to the plaintiff Roy B. Griffey. My wife, the plaintiff Margaret Rhodes, and I separated about fifteen years ago. At the time of the accident my daughter was living with me. Her husband was a salesman for the Cadillac automobile people. My daughter was twenty-four years old at that time. She had been married four years. She had no children. She was not employed at the time of the accident. She was keeping house for me. Her husband, who was the agent for the Cadillac automobile at Santa Ana, was always at my house in Long Beach on Sundays. He came to the house for Saturday night and Sunday. Except that she kept house for me, my daughter had never worked. Oh, yes, she did some moving picture work once at a studio, but she did not work there regularly; they called her at times. She had a friend that had a studio, and that friend called

her occasionally and she would go over and appear in pictures and then come back. It was not steady. She didn't depend upon that at all. It was more a fancy, I guess, than anything else. It was just a notion. She was not earning any money. She was the only housekeeper I had. I depended on her, and her husband was there with us when he was at home. I did not pay her anything for keeping house for me, and she paid no board. Her only heirs are myself, her mother, and her husband. At the time of the accident my daughter's health was perfect. She had never been sick in her life, and was perfectly strong, healthy, and normal.''

[5] The general rule in this class of cases is that the damages must be limited strictly to the *pecuniary* loss to the beneficiaries caused by the wrongful death. (*Bond* v. *United Railroads, supra,* 159 Cal. 279 [Ann. Cas. 1912C, 50, 48 L. R. A. (N. S.) 687, 113 Pac. 366].) Since the amount recoverable is the pecuniary loss sustained by the beneficiaries of the statute, and since the elements which go to make up the value of a decedent's life to the designated beneficiaries are necessarily personal in each case, in the very nature of things the assessment of damages does not admit of mathematical precision, but is left to the sound discretion of the jury, which, however, is subject to the supervisory power of the court and must be exercised in accord with the rules established for the assessment of damages in cases of this character.

The rules applicable to the instant case may be formulated substantially as follows: No damages can be given for the pain or anguish suffered by the person who is killed, the damages, as we have stated, being limited to the pecuniary loss suffered by the person or persons for whose benefit the right of action is given by reason of the death of the victim. ·(*Bond* v. *United Railroads, supra,* p. 277.)

[6] This pecuniary loss may be a loss arising from a deprivation of something to which the statutory beneficiary would have been *legally* entitled if the person had lived, or it may be a pecuniary loss arising from the deprivation of something which, from all the circumstances of the particular case, it could reasonably be expected such beneficiary would have received from the deceased had his life not been taken—even though the obligation resting on the de-

ceased to bestow such benefit may have been but a *moral* obligation.   (*Sneed* v. *Marysville Gas etc. Co.*, 149 Cal. 710 [87 Pac. 376]; *Bond* v. *United Railroads, supra.*)   Thus, there might be a reasonable expectation that if the life of a deceased had continued he might have accumulated a greater estate, and that the increased estate would have been inherited by the statutory beneficiaries as his heirs. Or, there might be a reasonable expectation that if the life of a deceased had not been taken the statutory beneficiaries, or some of them, would have continued to receive from the one who was killed financial assistance, or services having a financial value.   These are illustrations of *direct* financial benefits for the loss of which damages may be awarded.   In addition to the direct financial benefits which heirs may reasonably expect to receive from the continuance of the life of the deceased, there is that less tangible and not so immediate, but nevertheless real, pecuniary benefit which often may reasonably be expected from a continuance of the "society, comfort and protection" of the deceased.   Of the principles by which the jury is to be guided in determining the damages due to the pecuniary loss arising from the deprivation of the "society, comfort and protection" of a deceased, we shall speak presently.

[7]   There is a distinction between the injuries resulting to a parent from the death of a minor child and those resulting from the death of an adult child.   In the case of the former the law gives to the parent the right to the child's services and the proceeds of his labor; and the probability that the minor would remain in the service of the parent during minority, or would have permitted the parent to have the proceeds of his labor, is said to be unimportant.   But this rule does not apply in the case of injuries resulting from the death of an adult child to whose services the parent has no legal right.   In a suit to recover damages occasioned by the death of an adult child the plaintiff should show that there was a reasonable expectation that the parent would receive a benefit had the life of such child continued; and in the absence of a legal right to his services, such reasonable expectation of benefit to be received by the parent would depend upon the ability and will of the adult child to confer the benefit upon the parent.   (*Winnt* v. *International etc. R. Co.*, 74 Tex.

32 [5 L. R. A. 172, 11 S. W. 907].) In *Calumet etc. M. Co.* v. *Gardner*, 21 Ariz. 206 [187 Pac. 563], the court says: "The measure of damages, where the child is an adult, as here, is the reasonable expectation of the parent of pecuniary benefit from the continuance of the life of the child. (*Dooley* v. *Seaboard Air Line Ry. Co.*, 163 N. C. 454 [L. R. A. 1916E, 185, and note, 79 S. E. 970].) . . . The expectation must be based upon some fact or facts aside from the relationship. When a child becomes of age, all his earnings and accumulations are his to use as he sees fit. The laws of this state do not require an adult child to contribute his services or his earnings to his parents' support." (See, also, *Fordyce* v. *McCants*, 51 Ark. 509 [14 Am. St. Rep. 69, 4 L. R. A. 296, 11 S. W. 694]; *Hines* v. *Nichols* (Ind. App.), 130 N. E. 140, and 17 C. J., title "Death," par. 202.) And while it may not always be necessary to show that the adult child, after coming of age, had ever done anything for his parent, since the reasonable expectation may exist even though the parent, not being in need, had never received anything from the child after the latter had reached majority (*Dooley* v. *Seaboard Air Line Ry. Co.*, 163 N. C. 454 [L. R. A. 1916E, 185, 79 S. E. 970]), nevertheless, to entitle the parent to recover for the death of an adult child there must be some evidence showing, to a reasonable certainty, a pecuniary loss, and, with some reasonable probability, the amount thereof; that is, there must be evidence showing the competency and disposition of the adult child to respond to the parent's needs. (*Fordyce* v. *McCants, supra; Andrezejewski* v. *Northwestern Fuel Co.*, 158 Wis. 170 [148 N. W. 37].) The rule that there must be some evidence tending to show the competency and the disposition on the part of the child, after reaching his majority, to render service to the parent or to contribute to his aid, is generally satisfied by a showing that the deceased child, after having reached his majority, had been accustomed to aid his parent by the rendition of valuable services, performed in recognition of a filial duty and not under contract, or by the contribution of money, or its equivalent, toward the support of his parent. (*McCord* v. *Schaff*, 279 Mo. 558 [216 S. W. 320]; *Fordyce* v. *McCants, supra; Chicago etc. R. Co.* v. *Vester*, 47 Ind. App. 141 [93 N. E.

1039].   See, also, L. R. A. 1916E, pp. 197, 198, note to *Dooley* v. *Seaboard Air Line Ry. Co., supra;* 17 C. J. 1331, and *Parsons* v. *Easton,* 184 Cal. 770 [195 Pac. 419].)

[8]   Though one of the elements of damage which may be suffered by the parent of an adult child is the present value of such future financial assistance as the parent might reasonably expect from a continuance of the child's life, or the present value of such future services as the parent could reasonably expect to have received had the child lived, still, in estimating the amount of such damages, it is the expectancy of life of the parent, not the life of the child, which is to be taken into consideration; for, as is usually the case, the child's expectancy of life exceeds that of the parent.   (*Fordyce* v. *McCants, supra.*   See, also, *Parsons* v. *Easton, supra.*)   And in estimating the pecuniary value to the parent of the services of an adult child, the jury should take into account the value of any board and lodging or other accommodations which the parent may be furnishing to the adult child, if the latter is living with his parent.

[9]   Besides the pecuniary loss arising from the deprivation of *direct* financial assistance or from the deprivation of services, there may be, as we have said, a pecuniary loss arising from the deprivation of the "society, comfort, and protection" of the decedent.   (*Beeson* v. *Green Mountain Co.,* 57 Cal. 38; *Parsons* v. *Easton, supra.*)   But while loss of society, comfort, and protection may be an element of the injury sustained by the statutory beneficiaries, it is only the pecuniary, and not the sentimental, value of such loss which may be taken into consideration in the assessment of damages.   Nothing can be recovered as a *solatium* for wounded feelings.   If the society of the deceased was of no financial value to the statutory beneficiaries, no damages can be awarded for its loss.   (*Dickinson* v. *Southern Pac. Co.,* 172 Cal. 730, 731 [158 Pac. 183].)   In *Wales* v. *Pacific Electric M. Co.,* 130 Cal. 523 [62 Pac. 933], the court, holding that damages may not be awarded for the mere loss of society not involving some element of actual pecuniary loss, employed this language: "We have been cited to no case where the law says 'damages may be awarded for the loss of society.'   As we read and understand the law, it says directly to the contrary.   It is essen-

tially and alone pecuniary loss to the parent which he may recover in damages for the death of his child.'' What is meant by the ''pecuniary'' value of the society, comfort, and protection which may be lost through the untimely death of a spouse, parent, or child is fairly indicated by what was said in the Beeson case, where the court employed this language: ''The loss of a kind husband may be a considerable pecuniary loss to a wife; she loses his *advice and assistance* in many matters of domestic economy.'' (*Beeson* v. *Green Mountain Co.*, 57 Cal. 38.) Italics ours. (See, also, *Parsons* v. *Easton,* 184 Cal. 774 [195 Pac. 419].)

[10] Without doubt, the evidence in this case, if tested by the foregoing rules, shows that there was no abuse of discretion in granting a new trial on the ground of excessive damages. There is no evidence that the father had any reasonable expectation of *direct* financial benefit from a continuance of his daughter's life. In the first place, there is no evidence that the daughter possessed any property or that there was any reasonable probability that she ever would acquire any property. Nor is there any evidence from which it might be inferred that the father would probably have outlived his daughter if she had not been killed in the accident. On the contrary, the probability is that the daughter, who was strong and healthy and thirty-four years younger than her father, would have outlived him but for the fatal accident. There is no evidence, therefore, to justify a reasonable expectation that if the life of the deceased had continued any pecuniary advantage would have accrued to the father, or, for that matter, to any of these plaintiffs, as an heir or possible legatee or devisee of the deceased. In the second place, there is no evidence to warrant a reasonable expectation that if the life of the deceased had continued she would have bestowed upon her father, or upon any of these plaintiffs, at any time during the remainder of her life, any direct financial assistance in the way of gifts of money or property. She was not earning any money, and there is nothing to show that there was any probability that she ever would be a wage-earner or the recipient of an income. Nor is there any evidence that she ever was accustomed to giving money or making presents to any of her family.

The only other possible source of *direct* financial benefit that the father might reasonably have expected from a continuance of his daughter's life lies in the fact that she kept house for him.   But the evidence upon this phase of the case is so extremely fragmentary that it affords no substantial basis for the proper estimate of the pecuniary value of the daughter's services as a housekeeper.   There is no showing as to the size of the house of which she took care. So far as the evidence discloses the house may have contained few or many rooms.   There is nothing to show how much of her time the daughter gave to her household duties.   It does not appear whether she cooked all or any of her father's meals.   No showing was made respecting the contemplated duration of the arrangement.   The deceased, as a married woman, was in duty bound to follow her husband to any reasonable fit abode which he might select. Mayhap the arrangement to which the father testified was but temporary.   For aught that appears to the contrary, the deceased and her husband may have contemplated a change of residence.   In these matters the jury may not be permitted to roam the field of fancy and draw upon their imagination for facts not disclosed by the evidence.   The several elements of damage, where they exist, must be based on facts furnished by the evidence, and not upon surmise and conjecture.   Moreover, the food and lodging which the father furnished his daughter during all of the time that she was in the house, together with the food and lodging which was furnished the husband during a part of that time, had some financial value.   For aught that appears to the contrary, what the daughter received from the father in the way of food and other accommodations may have equalled or exceeded in value all that she rendered in return in the way of housekeeping.   It is quite possible that it might have been more profitable for the father, viewing the situation from a purely financial standpoint, to have hired an experienced professional housekeeper.   These considerations will suffice to disclose how far short the evidence falls of showing that the father's expectation of a benefit from his daughter's services was worth anything like eight thousand dollars.

Unless, therefore, the daughter's society had a very considerable pecuniary value for the father, the award of eight

thousand dollars was grossly excessive. It is true that, in estimating the damage which a surviving spouse, parent, or child may have sustained by being deprived of the society, comfort, and protection of the deceased, some latitude must be allowed to the discretion of the jury; for it is not possible to measure in exact terms of money the damage resulting from a loss of that character. But it must never be forgotten that, in fixing the amount, the jury is always bound by the fundamental rule that the *pecuniary* value of the society, comfort, and protection is the limit of recovery for a loss of that character, and the amount allowed therefor must have some reasonable relation to the pecuniary value shown by the evidence. In this case the father doubtless dearly loved his daughter; but "it is pecuniary loss only, and not the loss of an object of love and affection, that the law recognizes as ground for allowing damages to the heirs of one whose death has been caused by the negligence of a third person." (*Parsons* v. *Easton, supra.*) The evidence before us does not disclose any circumstance indicating that the society and comfort of this married daughter was of any pecuniary advantage to the father, or that there was any reasonable probability that it would be pecuniarily valuable in the future. There is nothing to show that by reason of superior business ability, or because of life's experiences, this young woman had become qualified to give her father valuable business advice or assistance. In short, there is nothing to show that the daughter's society had for the father any particular *financial* value. Eliminating, as we must, any consideration of the grief and mental suffering occasioned to the father by his daughter's death, it is impossible to conceive how the loss of the society and comfort of the deceased could have had for the father any appreciable money value.

The evidence is likewise lacking in definite substance with respect to the sum which the jury assessed in favor of the mother. We are utterly unable to perceive upon what theory it was supposed that the mother suffered a loss of one thousand dollars. There is no evidence that her daughter ever gave her any sums of money. There is nothing to show that the mother ever received, or that she had any reasonable expectation of ever receiving, any financial aid or personal services from the daughter subsequently to

the latter's marriage. And though the deprivation of society, comfort, and protection is an element of loss, it is as stated, an element of damage only when it has a pecuniary value. Here the mother and father had lived apart for fifteen years, and the daughter, at the date of her death, was living in the father's house. Upon what theory, then, can it be said that in the daughter's death the mother suffered a deprivation of society, comfort, and protection having for her a pecuniary, as distinguished from a sentimental value? We can perceive none whatever.

[11] It is not necessary to determine the reasonableness of the amount which the answers to the special interrogatories show was intended to be awarded to the husband— one thousand dollars. Since a verdict against the defendant in this class of cases must be for a single lump sum, the heirs having but a single joint cause of action (*Robinson* v. *Western States Gas Co., supra*), the verdict should be set aside and a new trial granted whenever it can be seen from answers to special interrogatories that the jury has made an excessive award of damages in their assessment of the loss sustained by any one or more of the statutory beneficiaries.

The order granting a new trial is affirmed.

Works, J., and Craig, J., concurred.

A petition to have the cause heard in the supreme court, after judgment in the district court of appeal, was denied by the supreme court on September 7, 1922.

All the Justices present concurred.

Richards, J., *pro tem.*, and Myers, J., *pro tem.*, were acting.